Thelma **COLLEY, General Administratrix and Administratrix ad Prosequendum of the Estate of Herbert Colley, Deceased, and Maggie Williams, General Administratrix and Administratrix ad Prosequendum of the Estate of John D. Williams, Deceased, Plaintiffs,**

v.

**HARVEY CEDARS MARINA et al., Defendants.**

Civ. A. No. 1039–72.

United States District Court, D. New Jersey.

Nov. 8, 1976.

Louis A. Smith, Burlington, N. J., Joseph D. Shein, Philadelphia, Pa., for plaintiffs.

William V. Webster, Jr., Richard E. Gehret, Parker, McCay & Criscuolo, Mount Holly, N. J., Elliott Yampell, Haddonfield, N. J., G. Wesley Manuel, Jr., Camden, N. J., for defendants.

OPINION

BROTMAN, District Judge.

This wrongful death and survival action arises out of the drownings of two men off the coast of New Jersey in April of 1971. Plaintiffs are the general administratrices and administratrices ad prosequendum of the estates of Herbert Colley and John D. Williams. Defendants are Harvey Cedars Marina, from whom the decedents rented the fiberglass boat in which they were riding, White's Shipbottom Marina, from whom Harvey bought the boat, and Viking Boat Company, the manufacturer of the boat. Plaintiffs' decedents were Pennsylvania residents and the estates are being administered in that state. Harvey Cedars Marina and White's Shipbottom Marina are incorporated in the State of New Jersey. Viking is an Indiana corporation licensed to do business in New Jersey. Jurisdiction is based on diversity of citizenship, 28 U.S.C. 1332 (1970).

The issue before the court involves conflict of laws. Plaintiffs have moved for a determination that Pennsylvania law should be applied in calculating the amount of damages recoverable in a survival action.[1] All parties agree on the substantive law of each state. Under the New Jersey Survival Act, N.J.S.A. 2A:15–3, the damages recoverable are essentially for pain and suffering between the time of injury and death. *See Foster v. Maldonado*, 315 F.Supp. 1179, 1180 (D.N.J.), *appeal denied*, 433 F.2d 348 (3rd Cir. 1970). Pennsylvania, however, allows recovery for pain and suffering plus loss based on the earning capacity of the decedent. 20 P.S. §§ 320.601–603.

A federal court sitting in diversity must apply the choice of law rules of the forum. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The motion therefore must be decided in conformity with the choice of law theory adopted by the New Jersey courts.

---

1. Both sides concede that both Pennsylvania and New Jersey allow unlimited recovery for wrongful death. That issue therefore is not before the court at this time.

New Jersey has adopted a governmental interest analysis approach to choice of law. *Mellk v. Sarahson*, 49 N.J. 226, 229 A.2d 625 (1967). In that case, the New Jersey Supreme Court refused to apply mechanically the lex loci delicti in a negligence action arising out of an automobile accident that occurred in Ohio. At issue was the standard of care to be applied when a driver is sued by a guest-passenger. Under Ohio law, a host-driver is not liable except upon a showing of willful or wanton misconduct. In New Jersey, however, a guest can recover against the host upon evidence of ordinary negligence. Both plaintiff and defendant in *Mellk* were from New Jersey. The court examined the purposes behind the Ohio law and found that they would not be furthered because plaintiff was not from Ohio nor were the Ohio courts involved. Thus New Jersey law was applied. *See* 49 N.J. at 230–31, 234–35, 229 A.2d at 627, 629–30. This same rationale was used in *Pfau v. Trent Aluminum Co.*, 55 N.J. 511, 263 A.2d 129 (1970) and *Rose v. Port of New York Authority*, 61 N.J. 129, 293 A.2d 371 (1972).

In reviewing the New Jersey cases in this area, the Third Circuit proposed the following two-step analysis:

> The court determines first the governmental policies evidenced by the laws of each related jurisdiction and second the factual contacts between the parties and each related jurisdiction. A state is deemed interested only where application of its law to the facts in issue will foster that state's policy. *Henry v. Richardson-Merrell, Inc.*, 508 F.2d 28, 32 (3rd Cir. 1975) (footnote omitted).

■ At the heart of interest analysis is the realization that often the interest of only one state will be furthered by application of its law on a particular issue. This presents a "false" conflict and a court should apply the law of the only interested jurisdiction.[2] Such was the analysis applied in *Foster, supra*. On identical facts, the court found that Pennsylvania was the only interested jurisdiction and that its law should be applied. We take a different view of the matter and hold that New Jersey would apply its own law to these circumstances.

■ The legislatures of New Jersey and Pennsylvania have made different judgments on the measure of damages in a survival action. Pennsylvania has determined that compensation to decedents' estates is of primary importance. Because plaintiffs administer Pennsylvania estates, the interest of Pennsylvania would be furthered by application of its law on this issue. Pennsylvania therefore is an interested jurisdiction.

The New Jersey legislature, on the other hand, has adopted a law that gives very limited benefits to decedents' estates. The protection of defendants from large recoveries has taken priority. New Jersey is not interested in protecting all defendants but only its own residents. Because both Harvey Cedars and White's Shipbottom are New Jersey corporations and because Viking Boat Co. does business in New Jersey, the interest of that state would be furthered by application of its law in this case. New Jersey is also an interested jurisdiction.

*Kilberg v. Northeast Airlines, Inc.*, 9 N.Y.2d 34, 211 N.Y.S.2d 133, 172 N.E.2d 526 (1961), presented a similar fact pattern except that the forum had the more generous measure of damages. Kilberg, a resident of New York purchased a ticket from Northeast Airlines for a flight from New York to Nantucket, Massachusetts. He died when the plane crashed at Nantucket. The administrator of Kilberg's estate brought a wrongful death action in New York against Northeast Airlines, a Massachusetts corporation. New York allowed unlimited damages; whereas, Massachusetts had a $15,000 maximum recovery. Although the rationale used by the New York court to justify application of New York law[3] is not rele-

---

2. *See generally B. Currie, Selected Essays on the Conflict of Laws* (1963).

3. The *Kilberg* court held that the amount of damages is a question of procedure and there-

vant here, the decision was the subject of much academic discussion. Brainerd Currie, the most influential advocate of governmental interest analysis, discussed the interest of Massachusetts in the *Kilberg* situation:

> [T]he Massachusetts policy of limiting liability for wrongful death is presumably to encourage socially useful enterprise by relieving entrepreneurs from what the legislature regards as an oppressive risk of liability. It is therefore appropriate, and necessary, to ask: *What* entrepreneurs? And the answer, surely is: those with whose welfare Massachusetts is concerned; namely, Massachusetts individuals, partnerships, trusts, corporations, and quite possibly foreign corporations doing business in Massachusetts.
>
> . . . The conflict in *Kilberg* is simple and clear: Massachusetts has a policy of encouraging enterprise by relieving it of the risk of unlimited liability for death; it has an interest in the application of that policy in *Kilberg* because the defendant is a Massachusetts enterprise . . . .[4]

Massachusetts as the limited recovery state corresponds to New Jersey in the case presently before the court.

The interest of a state with a limited damage recovery in protecting its citizen-defendant has been recognized in several cases. In *Hurtado v. Superior Court*, 11 Cal.3d 574, 114 Cal.Rptr. 106, 522 P.2d 666 (1974), Mexican plaintiffs sued California defendants for wrongful death resulting from an automobile accident in California.

The relationship of the law to the parties was the reverse of the situation at bar. Mexico, the plaintiff's domicile, had a limited recovery rule; California, the residence of the defendants, allowed an unlimited amount of damages. In holding that Mexico had no interest in having its damage limitation applied to the detriment of its own citizen and to the benefit of foreign defendants, the court stated: "The interest of a state in a tort rule limiting damages for wrongful death is to protect *defendants* from excessive financial burdens or exaggerated claims." *Id.* at 580–81, 114 Cal. Rptr. at 110, 522 P.2d at 670 (emphasis added).[5] New Jersey has such a rule limiting damages, operating to protect defendants who are New Jersey residents.

The Pennsylvania Supreme Court has discussed the purpose behind a survival statute similar to that of New Jersey. In *Griffith v. United Air Lines, Inc.*, 416 Pa. 1, 203 A.2d 796 (1964), a Pennsylvania plaintiff instituted a survival action against United Airlines arising out of an accident in Colorado. Colorado had a more restrictive damage rule than New Jersey. The court suggested that the policy behind the Colorado law was either to prevent Colorado courts from speculating about expected earnings or to protect Colorado defendants from large verdicts. *Id.* at 24, 203 A.2d at 807. *See also Turcotte v. Ford Motor Co.*, 494 F.2d 173 (1st Cir. 1974); *Tiernan v. Westext Transport, Inc.*, 295 F.Supp. 1256 (D.R.I. 1969).[6]

Defendants here are New Jersey residents, and a federal court sitting in the

---

fore is governed by forum law. 9 N.Y.2d at 41–42, 211 N.Y.S.2d at 137–38, 172 N.E.2d at 529. In the alternative, they rejected the Massachusetts maximum limit as contrary to New York's public policy. *Id.* at 40, 211 N.Y.S.2d at 136, 172 N.E.2d at 528. The former rationale was retracted in *Davenport v. Webb*, 11 N.Y.2d 392, 230 N.Y.S.2d 17, 183 N.E.2d 902 (1962).

4. *Currie, supra* note 2, at 704.

5. *See Reich v. Purcell*, 67 Cal.2d 551, 63 Cal. Rptr. 31, 432 P.2d 727 (1967). Justice Traynor rejected the application of Missouri law which limited recovery because the defendant was not from Missouri: "Defendant's liability should not be limited when no party to the action is

from a state limiting liability and when defendant, therefore, would have secured insurance, if any, without any such limit in mind." *Id.* at 556, 63 Cal.Rptr. at 35, 432 P.2d at 731. *See* Kay, *Comments on Reich v. Purcell*, 15 *U.C.L. A.L.Rev.* 584, 591–92 (1968). New Jersey has such an interest in this case because defendants are New Jersey businesses who may have secured insurance in light of this limitation. *See also Pfau v. Trent Aluminum Co.*, 55 N.J. 511, 263 A.2d 129 (1970).

6. *See also Maffatone v. Woodson*, 99 N.J.Super. 559, 240 A.2d 693 (App.Div.), *certif. denied*, 51 N.J. 577 (1968).

district of New Jersey must decide the choice of law issue the way the New Jersey courts would. *Klaxon, supra.* Application of New Jersey law to the present case would further the policies of avoidance of speculation and protection of defendants.

Because both Pennsylvania and New Jersey have an interest in having their respective laws applied in this case, a "true" conflict is presented. There are different approaches to the resolution of true conflicts. Currie begins his analysis with the presumption that the forum should apply its own law unless it is demonstrated that application of foreign law is appropriate.[7] Such a showing is not made when the forum is an interested jurisdiction. The law of the forum should be applied even though a foreign state also has an interest in the application of its contrary policy.[8] Thus New Jersey would apply its own law and this court must do the same. *Klaxon, supra.*

Another approach is that of Professor D. F. Cavers of the Harvard Law School who advocates the adoption of certain principles of preference.[9] His second principle is directly relevant here:

> *Where the liability laws of the state in which the defendant acted and caused an injury set a lower standard of conduct or of financial protection than do the laws of the home state of the person suffering the injury, the laws of the state of conduct and injury should determine the standard of conduct or protection applicable to the case, at least where the person injured was not so related to the person causing the injury that the question should be relegated to the law governing the relationship.*

.　　.　　.　　.　　.

Consider the response that would be accorded a proposal that was the opposite of this principle if it were advanced against a person living in the state of injury on behalf of a person coming there from a state having a higher standard of care or of financial protection. The proposal thus advanced would require the community the visitor entered to step up its standards of behavior for his greater safety or lift its financial protection to the level to which he was accustomed. Such a proposal would be rejected as unfair. By entering the state or nation, the visitor has exposed himself to the risks of the territory and should not expect to subject persons living there to a financial hazard that their law had not created.[10]

We therefore hold that New Jersey law will be applied in determining the amount of damages recoverable by an estate in this survival action. Plaintiffs' motion is therefore denied.

Counsel for defendants shall submit an appropriate order.

---

7. *Currie, supra* note 2, at 183–84.

8. *Id.*

9. *D. F. Cavers, The Choice-of-Law Process* (1965).

10. *Id.* at 146–47. R. A. Leflar suggests that a court should apply the "better rule of law." Leflar, *Conflicts Law: More on Choice-Influencing Considerations,* 54 *Calif.L.Rev.* 1585, 1587. This sentiment is also expressed by von Mehren and Trautman in their espousal of a functional approach to true conflicts. *A. von Mehren & D. Trautman, The Law of Multistate Problems* 76–79 (1965). Under their theory, a court should apply an emerging rather than a regressive policy. *See id.* at 376–78.

If this case involved recovery for wrongful death, the choice of Pennsylvania law as the more enlightened approach would be appealing. However, in the context of a survival action the purpose of which has been held to be protection of creditors, *Foster, supra,* we do not feel that Pennsylvania law should be preferred to that of New Jersey.