Joseph Anthony CAPONE, as Administrator of the Estate of Jennifer Ann Oelkers, deceased, a/k/a Jennifer Ann Capone, Plaintiff,

v.

Saroja NADIG, M.D., Defendant.

Civil Action No. 96–1152.

United States District Court,
D. New Jersey.

May 2, 1997.

David C. Federman, Beasley, Casey & Erbstein, Mt. Laurel, NJ, for Plaintiff.

Madelyn S. Quattrone, George, Korin, Quattrone, Blumberg & Chant, A Professional Corporation, Woodbury, NJ, for Defendant.

ORLOFSKY, District Judge:

In this medical malpractice wrongful death and survival action, Defendant has moved for partial summary judgment, pursuant to Fed. R.Civ.P. 56, on the issue of choice-of-law, as well as on the wrongful death claim of Plaintiff, Joseph Anthony Capone ("Capone"). Subject matter jurisdiction is conferred upon this Court by 28 U.S.C. § 1332.

The issues presented for resolution by Defendant's motion are: (1) whether the Survival Act of New Jersey or Pennsylvania governs this action; and (2) whether Plaintiff's knowledge that his spouse was terminally ill at the time of their marriage bars his recovery under New Jersey's Wrongful Death Act. For the reasons that follow, I conclude that New Jersey's Survival Act applies, and Plaintiff's knowledge of his wife's terminal illness at the time of their marriage does not preclude his wrongful death claim.

## I. Facts and Procedural History

For purposes of the Defendant's notion, the relevant facts are not in dispute. In the summer of 1994, Jennifer Ann Oelkers ("decedent") was a twenty-two year old full-time student at West Chester University in West Chester, Pennsylvania. During that summer, however, while residing at her parents' home in Cape May Court House, New Jersey, between semesters, Ms. Oelkers noticed swelling in her right pelvic area and brown spots on her vulva. Ms. Oelkers sought medical care from the Defendant, Dr. Saroja Nadig, a board certified gynecologist, in the Defendant's office in Woodbury, New Jersey. Ms. Oelkers visited the Defendant's office on two occasions, on June 20, 1994, and on August 22, 1994. After the August, 1994, visit, Defendant requested that Ms. Oelkers return for another examination in June of 1995. (Plaintiff's Brief ("P.B."), Ex.B).

Ms. Oelkers returned to West Chester University in the fall of 1994, and graduated in December of that year. (P.B., Ex.C). During the spring of 1995, she observed a growth in her vulvar area and sought medical care from non-party physicians in Pennsylvania. On June 2, 1995, a vulvar lesion was excised from her right labia and a pathologic diagnosis of probable high grade melanoma was made. (P.B., Exs.G,H,I).

In September of 1995, Ms. Oelkers began a full-time teaching position in Pottstown, Pennsylvania, where she also resided at that time. However, in October of that year, she was diagnosed with a recurrence of malignant melanoma. A CT scan taken on February 2, 1996, revealed metastasis to her liver. Shortly thereafter, on February 23, 1996, Ms.

Oelkers married Joseph Capone in the state of Arizona. (P.B., Ex.N).

On March 4, 1996, Ms. Oelkers and Mr. Capone instituted this suit, alleging that Defendant was negligent in the medical care she provided to Ms. Oelkers. The complaint also included a claim by Mr. Capone for loss of consortium.

Ms. Oelkers died on April 29, 1996, at her parents' home in Cape May Court House, New Jersey. Mr. Capone, as her husband, was appointed the administrator of her estate. After her death, Mr. Capone filed an amended complaint on July 5, 1996, seeking to recover damages from the Defendant under the Wrongful Death and Survivorship laws of the Commonwealth of Pennsylvania.

On April 4, 1997, Defendant moved for partial summary judgment on the issue of choice-of-law and on Mr. Capone's wrongful death claim.

## II. Summary Judgment Standard

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that [he or she] is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). See also Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1366 (3d Cir.1996); Hersh v. Allen Products Co., 789 F.2d 230, 232 (3d Cir.1986); Lang v. New York Life Ins. Co., 721 F.2d 118, 119 (3d Cir.1983). In deciding whether there is a disputed issue of material fact the Court must view all inferences, doubts and issues of credibility in favor of the non-moving party. See Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir.1995); Helen L. v. DiDario, 46 F.3d 325, 329 (3d Cir.), cert. denied, —— U.S. ——, 116 S.Ct. 64, 133 L.Ed.2d 26 (1995); Hancock Indus. v. Schaeffer, 811 F.2d 225, 231 (3d Cir.1987) (citation omitted); Meyer v. Riegel Prods. Corp., 720 F.2d 303, 307 n. 2 (3d Cir.1983), cert. denied, 465 U.S. 1091, 104 S.Ct. 2144, 79 L.Ed.2d 910 (1984). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

Moreover, Federal Rule of Civil Procedure 56(e) provides:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e).

Under this rule, a defendant must be awarded summary judgment on all properly supported issues identified in its motion, except for those for which a plaintiff has provided evidence to show that a question of material fact remains. Put another way, once the moving party has properly supported its motion, "its opponent must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). A summary judgment movant may meet its burden by showing that the opposing party is unable to meet its burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). Nonetheless, a moving party on the motion bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *Id.*

## III. Discussion

### A. *Choice-of-Law*

■ Defendant moves for summary judgment on the issue of choice-of-law. Defendant contends that New Jersey law should apply to this action, while the Plaintiff claims that Pennsylvania substantive law should

govern. As a federal court sitting in diversity, this Court is obliged to apply the choice-of-law rules of the forum state—in this case, New Jersey. *See Klaxon Co. v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941). New Jersey's choice-of-law principles dictate that a court use a flexible "governmental-Interest" analysis "which requires application of the law of the state with the greatest interest *in* resolving the particular issue." *Gantes v. Kason Corp.,* 145 N.J. 478, 484, 679 A.2d 106 (1996); *Veazey v. Doremus,* 103 N.J. 244, 510 A.2d 1187 (1986).

The first prong of the governmental-interest analysis requires a court to assess whether there is an actual conflict between the relevant laws of the respective states. If the court determines that such an actual conflict does exist, the second prong of the analysis "seeks to determine the interest that each state has in resolving the specific issue in dispute." *Gantes,* 145 N.J. at 485, 679 A.2d 106. The "qualitative, not the quantitative" nature of each state's interest must ultimately determine which state's laws should apply. *Veazey,* 103 *N.J.* at 248, 510 A.2d 1187.

■ In this case, it is clear that the first prong is satisfied with respect to Mr. Capone's survival claim.[1] The issue to be resolved, the extent to which a decedent's estate may recover damages in a survival action, presents a direct conflict between New Jersey and Pennsylvania law. New Jersey's Survival Act, N.J.S.A. § 2A:15–3, limits the recovery by the estate of a decedent to the pain and suffering experienced by the decedent from the time of the alleged negligence and resulting injury until the time of death. *See Eyoma v. Falco,* 247 N.J.Super. 435, 445, 589 A.2d 653 (App.Div.1991). In contrast, Pennsylvania's Survival Act, 20 Pa. C.S.A. § 3371, permits an estate to recover not only for the decedent's pain and suffering, but also for the prospective net earning capacity of the decedent. *See Skoda v. West*

---

1. The parties concede, and the Court agrees, that there is no conflict between the wrongful death acts of New Jersey and Pennsylvania. Compare 42 Pa.C.S.A. § 8301, *et seq.,* with N.J.S.A. § 2A:31–1 *et seq.* Accordingly, in the absence of

any conflict, this Court will employ the law of the forum—in this case, New Jersey—to this claim. *See Amoroso v. Burdette Tomlin Memorial Hospital,* 901 F.Supp. 900, 905 (D.N.J.1995).

*Penn Power Co.,* 411 Pa. 323, 191 A.2d 822, 829 (1963).

Having concluded that a true conflict does, in fact, exist between the relevant laws of the two states, the Court must next examine the nature and magnitude of each state's interest in seeing its laws applied in this case. The majority of the cases in this district and elsewhere which have addressed the New Jersey Legislature's intent in enacting New Jersey's Survival Act have found that, although the Legislature may have taken into account the interest of the decedent's estate by permitting an action to survive the decedent's death in the first instance, the Act's severe limitation on the recovery in such an action demonstrates that the Legislature's interest in the "protection of defendants from large recoveries [took] priority" over the interest of the decedent's estate. *Colley v. Harvey Cedars Marina,* 422 F.Supp. 953, 955 (D.N.J.1976). *See also Amoroso v. Burdette Tomlin Memorial Hospital,* 901 F.Supp. 900, 904 (D.N.J.1995); *Cannon v. Hilton Hotels Corp.,* 664 F.Supp. 199, 201 (E.D.Pa.1987); *Mathis v. Motley,* 649 F.Supp. 38, 40 (D.N.J. 1986); *Nolen v. Foundations and Structures, Inc.,* No. 83–1372, 1984 WL 3580 (D.N.J. April 19, 1984). *But see Pollock v. Barrickman,* 610 F.Supp. 878, 880–881 (D.N.J.1985) (court found that in enacting the Survival act, the New Jersey Legislature "did not consider the tort-feasor at all, but simply decided what elements of damage it was fair to permit the recovery of, in order to make whole the decedent").

I concur with the vast majority of cases in finding that, the New Jersey Legislature, in providing for such limited recovery under the Survival Act, "was expressing its interest in protecting New Jersey defendants." *See Mathis,* 649 F.Supp. at 40. Thus, I find that New Jersey's interest in the protection of its resident defendants from excessive damage awards would be furthered by the application of New Jersey substantive law to this case.

That is not to say that Pennsylvania's interest would not also be furthered by the application of its laws to this case. In permitting a decedent's estate to recover not only for the decedent's pain and suffering, but also for the prospective net earning capacity of the decedent, the Pennsylvania Legislature "has determined that compensation to decedents' estates is of primary importance." *Colley,* 422 F.Supp. at 955. Therefore, since the decedent in this case was a resident of Pennsylvania at the time of her death, it is clear that Pennsylvania's primary interest in seeing that a decedent's estate is justly compensated by a tortfeasor would be furthered by the application of Pennsylvania's survival statute to this case.

Because the interests of both New Jersey and Pennsylvania would be furthered by the application of their respective laws to this case, a qualitative evaluation of other factors must be conducted in order to determine which state's law should apply. Although New Jersey no longer adheres to the strict application of the rule of *lex loci delecti* in tort cases, "it has recognized that the place of the injury is an important factor to consider in determining what state has the greatest interest in a case." *Amoroso,* 901 F.Supp. at 903. Indeed, the place of the injury gains even greater importance where "the place where the injury occurred was not fortuitous, as for example, in an airplane crash." *Id.* (citing *Blakesley v. Wolford,* 789 F.2d 236, 243 (3d Cir.1986)).

The parties' respective residences are also factors to be considered in determining which state's laws to apply. In this case, the Defendant both lives and practices medicine in New Jersey. Although Ms. Oelkers was a resident of Pennsylvania at the time of her death, "[c]itizens do not . . . carry their home state's laws with them wherever they go." *Amoroso,* 901 F.Supp. at 906. Indeed, "[b]y entering the state . . . the visitor has exposed himself to the risks of the territory and should not expect to subject persons living there to a financial hazard that their law had not created". D.F. Cavers, *The Choice of Law Process* 146–47 (1965), *cited in Colley,* 422 F.Supp. at 957. Moreover, in the context of a doctor-Patient law suit, the Third Circuit has noted that, "it is only fair that the law of the state to which the patient has voluntarily traveled, and in which the doctor has chosen to [practice], be applied to adjudicate the respective rights, duties, and obligations be-

tween the parties." *Blakesley v. Wolford*, 789 F.2d 236, 243 (3d Cir.1986). *See also Amoroso*, 901 F.Supp. at 906 ("New Jersey also has an interest in the measurement of damages for which its resident medical service providers and homeowners can be held liable").

In this case, Ms. Oelkers voluntarily sought the medical care of Defendant at Defendant's office in Woodbury, New Jersey. It was at Defendant's office where the Defendant allegedly negligently failed to diagnose and treat Ms. Oelkers's melanoma. Because the relationship between Ms. Oelkers and the Defendant was centered in New Jersey, it was clearly more than a mere fortuity that Ms. Oelkers's alleged injury occurred in New Jersey.

Plaintiff, however, contends that:

although the alleged negligence took place in New Jersey, the injury did not occur until some time later in Pennsylvania ... In other words, the injury giving rise to this cause of action was the development of metastatic melanoma in the late spring of 1995, while [Ms. Oelkers] was a bonafide Pennsylvania domiciliary.

(Plaintiff's Brief at 113–14). This assertion is wholly without merit. That Ms. Oelkers may have begun to manifest symptoms stemming from Defendant's alleged negligent failure to diagnose her disease while living in a state other than where the alleged negligence occurred does not alter the fact that the alleged malpractice and injury occurred at the Defendant's medical office in New Jersey. *See Blakesley*, 789 F.2d at 241 n. 10 (rejecting consideration of the place where the *effects* of an injury are felt for purposes of choice-of-law).

For the foregoing reasons, I find that, although both New Jersey and Pennsylvania have an interest in seeing their respective laws applied to the survival claim in this case, New Jersey has a greater interest in having its laws applied. Not only did the alleged injury occur in New Jersey in this case, but Defendant is also a resident of New Jersey, entitled to expect the financial protections afforded by New Jersey law. Accordingly,

Defendant's motion for partial summary judgment on the issue of choice-of-law will be granted, and this Court will employ New Jersey law to Plaintiff's survival action.

### B. *Wrongful Death Claim*

■ Defendant also moves for partial summary judgment on the wrongful death claim brought by Mr. Capone as the administrator of Ms. Oelkers's estate.[2] Unlike a survival action which seeks to compensate the estate for the pain and suffering of the decedent prior to death, a wrongful death action under N.J.S.A. § 2A:31-1, *et seq.*, seeks to compensate for the "pecuniary loss that the survivors suffer as a result of the death of the decedent." *Lovely v. Rahway Hospital*, 227 N.J.Super. 614, 616, 548 A.2d 242 (Law Div.1988).

■ Damages in a wrongful death action may include "the loss of expected financial contribution and the pecuniary loss of future services, companionship and advice." *Green v. Bittner*, 85 N.J. 1, 12, 424 A.2d 210 (1980). However, "[c]ompanionship and advice in this context must be limited strictly to their pecuniary element." *Id.* In other words, to be compensable, companionship lost by death "must be that which would have provided services substantially equivalent to those provided by the 'companions' often hired." *Id.* No pecuniary value may be attributed to purely emotional loss. *Id.*

■ Defendant asserts that, because Mr. Capone knew that Ms. Oelkers was gravely and terminally ill at the time of their marriage, Mr. Capone's wrongful death claim "violates the spirit and policy underlying New Jersey's wrongful death statute." (D.B. at 13–14). Defendant claims that since Mr. Capone knew that Ms. Oelkers's prognosis was extremely poor at the time of their marriage, Mr. Capone could have "no reasonable expectation of pecuniary advantage or contributions" from Ms. Oelkers. (D.B. at 14).

I find no merit in the Defendant's contention that Mr. Capone should be precluded from maintaining a suit for wrongful death

2. N.J.S.A. § 2A:31–2 provides that an action for wrongful death "shall be brought in the name of

an administrator *ad prosequencum* of the decedents for whose death damages are sought."

because he knew that Ms. Oelkers was gravely ill at the time of their marriage. Mr. Capone's knowledge of his wife-to-be's illness does not alter the legal status afforded to him, as the administrator of Ms. Oelkers's estate and her legal spouse at the time of her death, to institute a wrongful death action under N.J.S.A. § 2A:31–1, *et seq.* Indeed, N.J.S.A. § 2A:31–2 explicitly provides that an action for wrongful death "shall be brought in the name of an administrator *ad prosequendum* of the decedent for whose death damages are sought."

N.J.S.A. § 2A:31–4 provides in relevant part that, "[t]he amount recovered in proceedings under this chapter shall be for the exclusive benefit of the persons entitled to take any intestate personal property of the decedent, and in the proportions in which they are entitled to take the same." According to the laws of intestate succession in New Jersey, such "persons entitled to take any intestate personal property of the decedent" in this case are Mr. Capone, as Ms. Oelkers's surviving spouse, and Ms. Oelkers's parents.[3]

Hence, whether and to what extent Mr. Capone may recover damages under the wrongful death statute does not affect his statutory right to institute a wrongful death action as the administrator of Ms. Oelkers's estate for the exclusive benefit of the "persons entitled to take any intestate personal property of the decedent." *See* N.J.S.A. § 2A:31–4. Accordingly, Defendant's motion for partial summary judgment on Plaintiff's wrongful death claim will be denied. This Court will enter an appropriate order.

### ORDER

This matter having come before the Court on the motion of the United States for partial summary judgment on the issue of choice-of-law and on Plaintiff's wrongful death claim, David C. Federman, Esq., of Beasley, Casey & Erbstein, appearing on behalf of the Plaintiff, and Madelyn S. Quattrone, Esq., of George, Korin, Quattrone, Blumberg &

Chant, A Professional Corporation, appearing on behalf of the Defendant; and,

The Court having considered the written submissions of the parties in support of, and in opposition to the motion;

For the reasons set forth in the Court's Opinion filed concurrently with this Order;

IT IS HEREBY ORDERED on this 2nd day of May, 1997, that the Defendant's motion for partial summary judgment on the issue of choice-of-law is GRANTED, and this Court will employ New Jersey substantive law in adjudicating Plaintiff's claims; and,

IT IS FURTHER ORDERED that Defendant's motion for partial summary judgment on Plaintiff's wrongful death claim is DENIED.

---

3. Intestate succession is governed by N.J.S.A. § 3B:5–3, which provides that if "[i]f there is no surviving issue but the decedent is survived by a parent or parents," a surviving spouse's share is "the first $50,000.00, plus one-half of the balance of the intestate estate." N.J.S.A. § 3B:5–3(b).

N.J.S.A. § 3B:5–4, in turn, states that "[t]he part of the intestate estate not passing to the surviving spouse under [N.J.S.A. § 3B:5–3]. passes ... [i]f there is no surviving issue, to his parent or parents equally." N.J.S.A. § 3B:5–4(b).