Doris B. ARCILA, as Administratrix ad Prosequendum for the heirs-at-law of Pedronel Arcila, deceased, as Administratrix of the Estate of Pedronel Arcila, deceased, and Individually, Plaintiffs,

v.

CHRISTOPHER TRUCKING, its agents, servants and/or employees; Christopher R. Burns, d/b/a Christopher Trucking, its agents, servants and/or employees, and Christopher R. Burns, Individually; Michael John Todd; and John Does 1–5, fictitious names for individuals and/or entities who are as yet unknown, Defendants.

CIVIL ACTION NO. 01–2682.

United States District Court,
E.D. Pennsylvania.

April 18, 2002.

Mark K. Smith, Anne P. McHugh, Princeton, NJ, for plaintiffs.

Richard W. Yost, Philadelphia, PA, for defendants.

### ORDER AND MEMORANDUM

DuBOIS, District Judge.

### ORDER

**AND NOW,** this 18th day of April, 2002, upon consideration of Motion of Defendants, Christopher Trucking and Michael John Todd, for a Determination of Choice of Law Issues (Document No. 9, filed February 12, 2002); plaintiffs' Memorandum of Law in Response to Defendants' Motion for Determination as to Choice of Law (Document No. 16, filed March 15, 2002); and defendants' supplemental filings, for the reasons set forth in the following Memorandum, **IT IS ORDERED** that said Motion is **GRANTED IN PART** and **DENIED IN PART,** as follows:

1. To the extent defendants move the Court for a determination as to what law should apply to the damages issues in this case, defendants' Motion is **GRANTED;**

2. To the extent defendants move the Court for a ruling that New Jersey law shall be applied to the damages issues in this case, defendants' Motion is **DENIED;**

3. Pennsylvania law shall be applied to the damages issues in this case.

**IT IS FURTHER ORDERED** that Pennsylvania law shall be applied to the liability issues in this case by agreement of the parties.

## MEMORANDUM

### I. BACKGROUND

The relevant facts for purposes of the pending Motion are undisputed. This case arises. out of a June 1, 1999, fatal accident on Interstate 78 in Northampton County, Pennsylvania. On that date, decedent, Pedronel Arcila, who was employed as a truck driver, was hauling a load from New Jersey to Pennsylvania. Shortly after crossing into Pennsylvania from New Jersey, decedent was directed "out of service" by Pennsylvania State Police troopers; he then parked his tractor-trailer on the side of the Interstate. Thereafter, a tractor-trailer driven by defendant, Michael John Todd, who was employed by defendant, Christopher Trucking, struck and killed decedent.

Plaintiff, Doris B. Arcila, on behalf of decedent's estate, decedent's heirs, and individually, filed the present action in this Court. Plaintiffs are citizens of New Jersey and defendants are citizens of Pennsylvania. Because the amount in controversy exceeds $75,000, the Court exercises diversity jurisdiction over plaintiffs' state-law causes of action under 28 U.S.C. § 1332.

Plaintiffs' Complaint asserts claims under both survival and wrongful death statutes, but does not specify whether the action is based on Pennsylvania or New Jersey law. The parties agree that New Jersey's and Pennsylvania's statutes governing both wrongful death and survival suits adopt the same standards for determining liability. The statutes differ significantly, however, in what damages they allow injured plaintiffs to recover. In the pending Motion, defendants move the Court for a ruling as to which state's law will govern the damages issues in this case.

### II. DISCUSSION

Because this is a diversity case, the Court applies the choice of law principles of the forum state, Pennsylvania. *On Air Entertainment Corp. v. Nat'l Indem. Co.*, 210 F.3d 146, 149 (3d Cir.2000) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)). Pennsylvania's choice-of-law analysis requires the Court to conduct a two-part inquiry: "First, the court must look to see whether a false conflict exists. Then, if there is no false conflict, the court determines which state has the greater interest in the application of its law." *LeJeune v. Bliss–Salem, Inc.*, 85 F.3d 1069, 1071 (3d Cir.1996) (citing *Cipolla v. Shaposka*, 439 Pa. 563, 267 A.2d 854 (1970)). "A false conflict exists where 'only one jurisdiction's governmental interests would be impaired by the application of the other jurisdiction's law.' " *Id.* (quoting *Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 187 (3d Cir.1991)). Upon a finding of a false conflict, "the court must apply the law of the state whose interests would be harmed if its law were not applied." *Lacey*, 932 F.2d at 187.

In this case, defendants argue, there is a true conflict in the damages permitted under Pennsylvania's and New Jersey's relevant statutes. The Court finds that there are indeed two significant differences between the law of damages adopted by New Jersey and Pennsylvania. Those differences exist in the states' general methods of calculating damages and in the damages permitted under each state's survival statute.[1]

---

**1.** Defendants assert that there is also a conflict under the wrongful death statutes in that Pennsylvania's statute allows for the recovery of emotional losses suffered by family members while New Jersey's statute does not permit such recovery. Defendants are incorrect; neither statute permits such recovery. *See Green v. Bittner*, 85 N.J. 1, 424 A.2d 210, 215–16 (1980); *First Nat'l Bank of Meadville v.*

■ With respect to the general calculation of damages, New Jersey places limits on what a plaintiff may recover by requiring that "future lost earnings be based on probable net earnings, take home pay, the amount left after taxes are deducted" and by providing that future damages must be reduced to present value. *Poust v. Huntleigh Healthcare,* 998 F.Supp. 478, 498–99 (D.N.J.1998) (quotation omitted). Pennsylvania does not impose either of these limitations. *See Kaczkowski v. Bolubasz,* 491 Pa. 561, 421 A.2d 1027, 1039 (1980) (instructing courts of Commonwealth to "abandon the practice of discounting lost future earnings"); *Rivera v. Phila. Theological Seminary of St. Charles Borromeo, Inc.,* 510 Pa. 1, 507 A.2d 1 (1986) (finding "no reason to re-evaluate" case law holding "that income tax consequences are not considered in fixing damages for the determination of decedent's earning capacity") (quotation omitted).

■ As for damages under each state's survival statute, New Jersey's law is, again, more restrictive than Pennsylvania's. Under New Jersey's Survival Act, N.J.S.A. § 2A:15–3, recovery is limited "to the pain and suffering experienced by the decedent from the time of the alleged negligence and resulting injury until the time of death." *Capone v. Nadig,* 963 F.Supp. 409, 412 (D.N.J.1997) (citing *Eyoma v. Falco,* 247 N.J.Super. 435, 589 A.2d 653 (1991)). Pennsylvania's Survival Act, 20 Pa.C.S.A. § 3371, on the other hand, "permits an estate to recover not only for the decedent's pain and suffering, *but also for the prospective net earning capacity of the decedent.*" *Id.* at 412–13 (citing *Skoda v. W. Penn Power Co.,* 411 Pa. 323, 191 A.2d 822, 829 (1963)) (emphasis added).

Notwithstanding these differences in the two states' approaches to damages, the Court concludes that the purported conflict is a false one. The Court draws support for this conclusion from the Third Circuit's reasoning in its analogous *Lacey* decision. *Lacey* involved an airplane accident that occurred in British Columbia, Canada. Plaintiff, an Australian citizen, brought suit in the Western District of Pennsylvania against two defendants, one of whom was a Pennsylvania citizen. *Lacey,* 932 F.2d at 172–75.

At issue before the *Lacey* court was whether the law of British Columbia or the law of Pennsylvania should apply; the apparent conflict resulted "primarily from the fact that Pennsylvania has adopted strict liability, whereas British Columbia has not." *Id.* at 188. These different standards revealed the two jurisdictions' divergent policy interests. Pennsylvania's adoption of a strict liability standard evinced the state's "interest in deterring the manufacture of defective products and in shifting the costs of injuries onto producers." *Id.* British Columbia, however, adopted a policy of "fostering industry within its borders." *Id.* Applying Pennsylvania's law, the court concluded, would further Pennsylvania's interest, but, in light of the fact that the allegedly negligent conduct took place within Pennsylvania and not within British Columbia, applying British Columbia's law would not promote that jurisdiction's interest. *Id.* In contrast, "applying British Columbia's negligence standard ... would harm Pennsylvania's interest." *Id.* Based on this analysis, the Third Circuit concluded that the case "present[ed] a false conflict, and that the district court probably should apply the law of Pennsylvania—the juris-

*Niagara Therapy Mfg. Corp.,* 229 F.Supp. 460, 470 (W.D.Pa.1964) (considering precursor to current Pennsylvania wrongful death statute); *see also Capone v. Nadig,* 963 F.Supp. 409,

412 n. 1 (D.N.J.1997) (concluding that "there is no conflict between the wrongful death acts of New Jersey and Pennsylvania").

diction whose interests would be damaged if its law were not applied." *Id.*[2]

■ The same scenario is present in this case. New Jersey's law governing damages has been described, by "the majority of the cases," as embodying the "Legislature's interest in the 'protection of defendants from large recoveries.'" *Capone*, 963 F.Supp. at 413 (quoting *Colley v. Harvey Cedars Marina*, 422 F.Supp. 953, 955 (D.N.J.1976)). Pennsylvania, by contrast, has adopted a "liberal damage policy." *Blakesley v. Wolford*, 789 F.2d 236, 240 (3d Cir.1986). Applying New Jersey law in this case would undoubtedly limit defendants' exposure to damages. This outcome, however, cannot be said to promote New Jersey's policy of protecting defendants from large damages recoveries because none of the defendants are New Jersey citizens and none of the allegedly negligent conduct occurred in New Jersey. Application of New Jersey law would also impair Pennsylvania's interest in promot-

ing recovery and its corollary interest in deterring tortious conduct within its borders. On the other hand, application of Pennsylvania law would not only promote Pennsylvania's interest, but it would also avoid any deleterious impact on New Jersey's policy. *Cf. Broome v. Antlers' Hunting Club*, 595 F.2d 921, 925 (3d Cir.1979) (concluding that "New York's interest in applying its law of damages to its resident who chose to vacation in Pennsylvania would weigh lightly on the qualitative scale compared with Pennsylvania's policy of compensating tort victims when that state is the place of the tortious impact").

Accordingly, the Court concludes that the relevant differences in Pennsylvania's and New Jersey's law governing damages constitute a false conflict. The Court will therefore apply the law of Pennsylvania, "the state whose interests would be harmed if its law were not applied." *Lacey*, 932 F.2d at 187.

■ In the alternative, the Court concludes that even if there is a true conflict,[3]

**2.** The *Lacey* court's statement that the district court should "probably" apply Pennsylvania law was based on the incomplete state of the record as to the policies underlying the two jurisdictions' standards of liability. *See Lacey*, 932 F.2d at 188. Notwithstanding the lack of finality to the *Lacey* court's holding on the issue, this Court notes that the analysis in *Lacey* as to the policies underlying the different liability standards rests on firm precedential ground. The Third Circuit's analysis in that case was based on its earlier decision in *Reyno v. Piper Aircraft Co.*, 630 F.2d 149 (3d Cir.1980). In *Reyno*, the court dealt with a case brought in Pennsylvania by Scottish plaintiffs. The differences between Scottish law and Pennsylvania law were the same as in *Lacey*—Scotland required a showing of negligence whereas Pennsylvania employed strict liability. *Lacey*, 932 F.2d at 187–88 (citing *Reyno*, 630 F.2d at 168). As the *Lacey* court explained *Reyno*:

> We hypothesized, first, that Scotland eschewed strict liability in favor of a negligence standard in order to encourage industry within its borders. We similarly opined that Pennsylvania adopted strict lia-

bility in order to shift some of the burden of injuries from consumers onto producers and to induce manufacturers to be more careful. Based on our estimate of the two jurisdictions' interests, we concluded that there was a false conflict.

*Lacey*, 932 F.2d at 188 (citing *Reyno*, 630 F.2d at 168) (footnote omitted).

**3.** The Court includes this alternative analysis in light of the authority cited by defendants holding that, in enacting its more restrictive damages provisions under the survival statute, the New Jersey "Legislature did not consider the tort-feasor at all, but simply decided what elements of damage it was fair to permit the recovery of, in order to make whole the decedent." *Pollock v. Barrickman*, 610 F.Supp. 878, 880–81 (D.N.J.1985). The *Capone* case, on which the Court relied in finding that New Jersey's law serves an interest in protecting defendants against large recoveries, cited the *Pollock* decision, but explicitly rejected it. *See Capone*, 963 F.Supp. at 413. In light of "the vast majority of cases" reaching a different conclusion, *id.*, this Court joins the *Capone* court in rejecting the holding in

the second component of Pennsylvania's choice-of-law analysis, requiring the court to determine "which state has the greater interest in the application of its law," leads to the same result—application of Pennsylvania's law of damages. *LeJeune*, 85 F.3d at 1071.

Under Pennsylvania law, to conduct this analysis, the Court must evaluate "what contacts each state has with the accident, the contacts being relevant only if they relate to the 'policies and interest underlying the particular issue before the court.'" *Cipolla*, 267 A.2d at 856 (quoting *Griffith v. United Air Lines, Inc.*, 416 Pa. 1, 203 A.2d 796, 805 (1964)). "When doing this it must be remembered that a mere counting of contacts is not what is involved." *Id.* Instead, "[t]he weight of a particular state's contacts must be measured on a qualitative rather than quantitative scale." *Id.* In a tort case, the Pennsylvania analysis is essentially the same as that set forth in Restatement (Second) of Conflict of Laws § 145 (1971). *See Troxel v. A.I. duPont Institute*, 431 Pa.Super. 464, 636 A.2d 1179, 1180–81, *appeal denied*, 538 Pa. 648, 647 A.2d 903 (1994). Section 145 provides, in relevant part, that the contacts to be considered include: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." Restate-

ment (Second) of Conflict of Laws § 145(2).

Application of the Restatement to the facts of this case weighs heavily in favor of utilizing Pennsylvania law. The injury, decedent's death, occurred in Pennsylvania as a result of defendants' allegedly negligent conduct, which also took place in Pennsylvania.[4] All defendants are citizens of Pennsylvania, and, importantly, conduct business in Pennsylvania; defendants are therefore on notice—at least constructively—of Pennsylvania's law governing remedies for injuries caused by negligent conduct. Finally, the only relationship that ever existed between the parties arose out of the accident which, as stated, occurred in Pennsylvania.

The sole significant contact with New Jersey in this case is that decedent was, and plaintiffs are, citizens of that state. New Jersey, in enacting wrongful death and survival statutes, surely has an interest in the administration of a decedent's estate and in the decedent's heirs' recovery of damages. *See Kiehn v. Elkem–Spigerverket A/S Kemi–Metal*, 585 F.Supp. 413, 417 (M.D.Pa.1984) (citing *Griffith*, 203 A.2d at 807) (noting that "causes of action in wrongful death and survival cases are unique in that they are specifically authorized by statute" and that those statutes reflect important state interests). Notwithstanding this important interest, the Court, conducting the necessarily "qualitative" analysis, concludes that Pennsylvania's contacts with this case are weightier than New Jersey's contacts.[5]

---

*Pollock.* Nevertheless, given that at least one jurist has reached a contrary conclusion that, if applied in this case, would result in a "true conflict," the Court deems it important to include a brief analysis of which state possesses the most significant interest in application of its law.

**4.** To the extent defendants endeavor to mitigate the weight of these facts by arguing that the accident leading to decedent's death occurred immediately after both decedent and

defendant Todd crossed the border from New Jersey into Pennsylvania, the Court rejects defendants' argument.

**5.** The Court notes that the weight of New Jersey's interest, as evidenced by its enacting wrongful death and survival statutes, is somewhat lessened by the fact that Pennsylvania's wrongful death statute explicitly grants a right of action for non-residents of Pennsylvania. *See 42 Pa.C.S.A. § 8301(b)* (providing that "the right of action created by this sec-

Thus, the Court determines that Pennsylvania has a more significant interest in the application of its law to this case.

## III. CONCLUSION

For the foregoing reasons, the Court will apply Pennsylvania law to the damages issues in this case.

tion shall exist only for the benefit of the spouse, children or parents of the deceased, whether or not citizens or residents of this Commonwealth or elsewhere'').