Ada B. FOSTER, Administratrix ad Prosequendum of the Estate of Mark Foster and Ada B. Foster, General Administratrix of the Estate of Mark Foster, Plaintiff,

v.

Ruben Dario MALDONADO, Jr. and James R. Jones, Defendants.

No. 697–69.

United States District Court, D. New Jersey.

Aug. 10, 1970.

**1180**

Shackleton & Kelly, by Bernard V. Kelly, Ship Bottom, N. J., for plaintiff.

Kisselman, Devine, Deighan & Montano, by Carl Kisselman, Camden, N. J., for defendants.

GARTH, District Judge:

On January 1, 1969, Mark Foster, a domiciliary of Pennsylvania, was involved in an automobile accident which resulted in his death on that same date. The car which struck Foster's was owned by defendant James R. Jones and was driven by defendant Ruben Maldonado, Jr. Liability on the part of Maldonado is admitted. The plaintiff herein appearing as Administratrix ad Prosequendum and General Administratrix of the Estate of Mark Foster, has dismissed the action against Jones.

■ The complaint seeks damages for the estate (survivorship) and for wrongful death. It is conceded that the New Jersey and Pennsylvania measure of damages in wrongful death actions are identical. Hence, the sole issue presented here is whether the New Jersey or Pennsylvania law of damages in *survival* actions should be applied. This Court is bound under the "Erie Doctrine" to apply the New Jersey conflict of laws rule. 1A J. Moore, Federal Practice ¶0.311 (2d ed. 1965).

Depositions taken of the decedent's mother reveal that the decedent Mark Foster was domiciled in Pennsylvania, having lived there with his mother. He had also been employed in Pennsylvania and his church and social activities were centered in Pennsylvania.

The defendant Maldonado and the defendant Jones (who has been dismissed from the action), were both domiciliaries of New Jersey; the automobile driven by Maldonado and owned by Jones was insured in New Jersey under New Jersey insurance rates.

The parents of the decedent had been divorced some twenty years previous, and the father having remarried, was a resident of New Jersey. However, the decedent saw his father infrequently and had never lived with him.

On the particular night in question, the decedent had been with a young lady who lived in New Jersey and whom he had visited on occasion. They attended a church service in New Jersey, after which they had planned to attend a New Year's Eve party in New Jersey. It was in the early morning hours of New Year's Day that the accident occurred from which Foster died.

■ Under the New Jersey Survival Act N.J.S.A. 2A:15-3, the damages recoverable are essentially for "pain and suffering" between the time of injury and death. Under the Pennsylvania Survival Act, 20 P.S. §§ 320.601-602-603, the recoverable damages are not limited to "pain and suffering", but also include "pecuniary loss" to the decedent's estate based upon the earning capacity of the decedent.

In view of the fact that Mark Foster's death occurred within a relatively short time, and on the same day as the accident, the measure of damages allowed under New Jersey law would be substantially less than that under Pennsylvania law, inasmuch as New Jersey does not permit pecuniary loss as an element of damages. It is this difference in the amount of damages recoverable that gave rise to the plaintiff's Motion that

the Pennsylvania law of damages be made applicable to the cause of action.

Plaintiff contends:

1. that New Jersey no longer applies the *lex loci delicti* rule in choice of law cases, and that it has adopted the "governmental interest" rule;

2. that Pennsylvania has the dominant governmental interest, and as such its law should apply in the measurement of damages recoverable under the survivorship count of the complaint;

3. that the State of Pennsylvania has a strong interest concerning the estates of its decedents, and that New Jersey has no similar policy or interest in the administration of an estate of a Pennsylvania decedent;

4. that New Jersey has no substantial or equivalent interest in the amount of damages which may be recovered by such an estate, particularly in view of the absence of an arbitrary dollar limit on damages recoverable in an action such as this;

5. that the decedent's estate will be administered in the State of Pennsylvania, where his creditors and prime beneficiary (Foster's mother) reside;

6. that the decedent's contacts with New Jersey were limited, and that the occurrence of the accident in New Jersey was merely an adventitious circumstance.

At the outset it should be stated that after a long history of mechanically applying the *lex loci delicti* in choice of law cases, New Jersey made a dramatic change in Mellk v. Sarahson, 49 N.J. 226, 229 A.2d 625 (1967). *Mellk* was a personal injury negligence action in which New Jersey residents (plaintiffs and defendants) left from New Jersey to visit a friend in Wisconsin. On the return trip to New Jersey an accident occurred in Ohio, due to the negligence of defendant-driver. Pursuant to Ohio law, a host-driver was not liable to his guest for ordinary negligence. A contrary result was indicated under New Jersey law.

The New Jersey Supreme Court in a unanimous opinion written by Justice Proctor, held that the *lex loci delicti* would not be applied under the facts of *Mellk*. It was stated that one must not mechanically apply the *lex loci delicti* if unjust results would obtain in a particular case. Hence, the view presented in the leading case of Babcock v. Jackson, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279, 95 A.L.R.2d 1 (1963), was adopted.

The new rule to be followed in New Jersey, was stated by Justice Proctor as follows:

"This Court has already recognized that the *lex loci delicti* should not be applied mechanically, but that courts should give attention to other factors which are relevant to the choice of law process. When an employee of a New York firm sued a co-employee for negligence arising out of an automobile accident which occurred in this State, we determined that New York had the paramount interest in the relationship of the parties and applied the New York law which barred tort suits by an employee against a co-employee for injuries suffered in the course of employment though such suits were then permitted in New Jersey. Stacy v. Greenberg, 9 N.J. 390, 397, [88 A.2d 619] (1952). Where a wife sued her husband for injuries received in an automobile accident in New York before the parties married, we applied our law of interspousal immunity and dismissed the claim though it was maintainable under New York law because we determined that New Jersey had the paramount interest in the marital relation. Koplik v. C. P. Trucking Corp., 27 N.J. 1, 11–12, [141 A.2d 34] (1958). And even where we have applied the law of the place of the wrong, we have done so only after full consideration of the policies and purposes of the rules of the states involved. Wilson v. Faull, 27 N.J. 105, 124, [141 A.2d 768] (1958)." (49 N.J. at 229, 229 A.2d at 626)

It was then held that since two New Jersey residents were involved in the litigation, the host-guest relationship originated in and was to terminate in New Jersey, the automobile insurance had been purchased in New Jersey, and no strong policy of Ohio would be frustrated, New Jersey law would be applied. The State of New Jersey, under the facts presented, had the "paramount interest" in the host-guest relationship.

Pfau v. Trent Aluminum Company, 55 N.J. 511, 263 A.2d 129 (1969), which followed *Mellk* gave full expression to the *Mellk* rationale of the governmental interest anaysis approach to conflict of laws problems, and is the most recent pronouncement of New Jersey law in this complex area.

Justice Proctor, writing for an again unanimous court, reviewed virtually all the cases and considerations giving rise to this approach. It was concluded that after analysis of the conflicting interests as to a particular issue, and the policy and policies of the rules of the states involved, the law to then be applied should be the law of that state having the strongest interest and policy covering the disputed issue.

*Pfau* was concerned with a host-guest situation where the plaintiff-guest, a Connecticut domiciliary was injured in Iowa while a passenger in an automobile driven by a New Jersey domiciliary and owned by a New Jersey corporation. The Iowa statute provides that a host-driver is not liable to his passenger-guest for ordinary negligence. New Jersey requires a host to use at least ordinary care for the safety of his guest. In determining that New Jersey law should govern, the New Jersey Supreme Court applied the New Jersey substantive law of conflicts and then utilizing the governmental interest rule applied the New Jersey host-guest law. In so holding, the court analyzed these interests and policies of Iowa and contrasted them with their counterparts in New Jersey with relation to the issues involved.

Adopting the same approach as I must, I find that the State of Pennsylvania has a very strong interest in the estates of its decedents, while New Jersey apparently has little, if any, countervailing policy in the management of an estate of a Pennsylvania decedent and the amount of damages recoverable by such estate.

In the case of Griffith v. United Air Lines, Inc., 416 Pa. 1, 203 A.2d 796, 807 (1964) it was stated:

" * * * Our Commonwealth, the domicile of the decedent and his family, is vitally concerned with the administration of the decedent's estate and the well being of the surviving dependents to the extent of granting full recovery, including expected earnings. This policy is so strong that it has been embodied in the Constitution of Pennsylvania, Article III, Section 21 P.S. * * * ".

The quoted section of the Pennsylvania Constitution reads in part:

" * * * in no other cases [cases other than employer-employee cases] shall the General Assembly limit the amount to be recovered for injuries resulting in death. * . * * "

*Griffith* was concerned with a Pennsylvania executor of a Pennsylvania decedent's estate who brought suit against United Air Lines, Inc. and others for wrongful death resulting from a plane crash in Colorado on the theory of breach of contract. Defendant, United, was a Delaware corporation with its principal place of business in Illinois, but it maintained facilities in Pennsylvania. The issue arose as to the applicable measure of damages, i. e., whether Colorado or Pennsylvania law should be applied. Under Colorado law the decedent's estate was only entitled to loss of earnings and expenses prior to death, while under Pennsylvania law, pain and suffering and present worth of prospective earnings were additionally recoverable.

The Pennsylvania court applied Pennsylvania law on the issue of damages,

since Pennsylvania had the greater interest in the amount of recovery. Of particular significance was the fact that the decedent's Will and Estate were being administered in Pennsylvania.

One can hardly envision a stronger statement of policy than that enunciated in *Griffith,* supra, and the Pennsylvania Constitution. The State of New Jersey has no such strong countervailing policy with relation to out-of-state decedents.

Similarly, in a wrongful death context, the New York Court of Appeals in Long v. Pan American World Airways, Inc., 16 N.Y.2d 337, 266 N.Y.S.2d 513, 213 N.E.2d 796 (1965), stressed the vital concern of Pennsylvania with the administration of the estates of its decedents. In *Long,* defendant's commercial airline was enroute from San Juan, Puerto Rico to Philadelphia, Pennsylvania, when it disintegrated in flight near Maryland. The plaintiffs brought a wrongful death and survival action in the New York court. Under the Maryland law a limited recovery would be obtained while a greater recovery was available under Pennsylvania law. In holding that Pennsylvania law should be applied, Judge Fuld stressed that Pennsylvania had the greatest concern with the wrongful death and survival issues. Not only were plaintiffs and decedents domiciled in Pennsylvania, but the relationship of Maryland to the occurrence was purely an adventitious circumstance.

The same approach is apparent in Reich v. Purcell, 67 Cal.2d 551, 63 Cal. Rptr. 31, 432 P.2d 727 (1967) (cited in *Pfau,* supra), a wrongful death action arising out of a head-on collision in Missouri. Defendant owned an automobile and was a domiciliary of California on his way to Illinois. Plaintiffs were Ohio residents on their way to California.

In Missouri the maximum that could be recovered was $25,000. Ohio had no such limitation. In applying Ohio law, Chief Justice Traynor stressed that Ohio had a strong interest in the estates of its decedents. Hence, that state's law would be applied, particularly where it would result in no conflict with Missouri law. See also Miller v. Miller, 22 N.Y.2d 12, 290 N.Y.S.2d 734, 237 N.E.2d 877 (1968) and Brendle v. General Tire & Rubber Co., 408 F.2d 116 (4th Cir. 1969).

The logic of the wrongful death cases cited applies equally to survival actions—actions which have as their primary justification the protection afforded creditors. Fisher v. Dye, 386 Pa. 141, 146–147, 125 A.2d 472 (1956). As was stated by Chief Justice Stern in *Fisher:*

"It is the invasion of the interest of the decedent which finds redress in this [survival] action. Hence, damages are viewed and measured in terms of the loss suffered by the decedent. The survival of such an action finds primary justification in the protection it affords creditors. It also serves to some degree as a means of assuring that the distributable estate shall include some present value in lieu of what the deceased might have been expected to accumulate during a normal lifetime. Thus, the policy underlying such a recovery does not yield any implication concerning either the eligibility or the disqualification of anyone as a participant in the ultimate distribution of the net estate. Indeed, any such question is premature in the survival action."

In view of the strong policy and concern of Pennsylvania with the administration of the estates of its decedents and the comparable lack of strong policy in the State of New Jersey, it is held that Pennsylvania law should apply under the facts of this case as to the amount of damages recoverable in this survival action. This does not mean that the law of New Jersey should not control the issues of negligence, contributory negligence and the like, for certainly as to those issues, New Jersey's interest is paramount to that of Pennsylvania. However, as to the specific issue (survival damages) now considered,

it is Pennsylvania that has the paramount governmental interest and concern, and hence, it is Pennsylvania law which will be applied.

As has been noted in the opening paragraphs of this opinion, the liability of the defendant Maldonado has been admitted. The co-defendant has been dismissed. Hence, the only issue remaining open is the issue of damages and the determination of which state's law shall apply in determining the damages recoverable. This opinion which holds that Pennsylvania law should be applied on the issue of survival damages involves a controlling question of law as to which there is a substantial ground for difference of opinion in the terms of 28 U.S.C. § 1292(b).

An immediate appeal from the order to be entered on the basis of this opinion would materially advance the ultimate determination of the litigation and it is so certified.

An appropriate order shall be submitted.