112 N.J. Super. 585 (1971)
272 A.2d 306
NEW JERSEY MAUNFACTURERS INSURANCE COMPANY, PLAINTIFF,
v.
KEYSTONE INSURANCE COMPANY, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided January 6, 1971.
*586 Mr. Bernard A. Campbell, Jr. for plaintiff (Messrs. McLaughlin, Dawes & Abbotts, attorneys).
Mr. Richard I. Wood, for defendant (Messrs. Lewis, Siegel & Wood, attorneys).
FRITZ, J.S.C.
This is a declaratory judgment action designed to determine which of two automobile liability insurance carriers is responsible for the defense of claims asserted consequent upon an accident. The relatively simple facts were not susceptible of contradiction and so were stipulated. The legal issues were simplified by the concession of the parties that one or the other insurance company would defend the claims under a then extant policy, depending upon the resolution of the legal issue remaining.
The automobile involved was purchased from the manufacturer by Kelsey H. Edwards (hereafter Kelsey), father of K. Robert Edwards (hereafter Robert). Kelsey was insured with respect to this automobile by defendant Keystone Insurance Company. On Friday, January 9, 1970, Kelsey, while the registered owner, drove to his son's residence, which was separate and apart from Kelsey's, for the purpose of selling the automobile to his son. On that date he gave his son possession of the vehicle, delivering both the keys and a fully executed assignment of certificate of ownership, the latter appearing on the reverse of the original *587 certificate of ownership. Robert paid his father in full for the car and delivered a check to him for $300.
The following day, Saturday, January 10, 1970, several attempts were made (apparently by father and son together, although this does not appear in the stipulated facts, and is probably not significant) to locate a motor vehicle agency, presumably to effect the change of title on the records of the Division of Motor Vehicles. None was found that was open. Kelsey returned home.
On Sunday, January 11, 1970, Robert was involved in an accident while driving the automobile in question. It is this accident from which the claims and this litigation have arisen.
The next business day, Monday, January 12, 1970, Kelsey deposited the check he had received in his bank in the municipality where he resided. On Friday, January 16, 1970, Robert recorded the assignment of certificate of ownership he had received with the Motor Vehicle Division, and received his own certificate of ownership.
The sole issue here to be determined is the ownership of the automobile at the time of the accident. The question may be framed in terms of title. If, under the applicable New Jersey law, title passed to Robert with the delivery and execution of the assignment on Friday, January 9, 1970, then there must be a judgment for defendant. If, on the other hand, as plaintiff argues, title was not perfected, and consequently did not pass until submission to the Director of the Division of Motor Vehicles of evidence of the purchase, then plaintiff must have judgment.
Regulation of ownership and operation of motor vehicles in this State is statutory as an expression of the State's proper interest in regulating the use of its highways in the common welfare. State v. Kabayama, 98 N.J. Super. 85, 88 (App. Div. 1967), aff'd o.b. 52 N.J. 507 (1968). Accordingly, we must endeavor to divine from statutory expression the intent of the Legislature in this regard. In re Public Service Coordinated Transport v. Super Service Bus *588 Co., 82 N.J. Super. 371 (App. Div. 1964), certif. den. 42 N.J. 143 (1964).
We consider first defendant's argument that title passed under the provisions of the Uniform Commercial Code, N.J.S.A. 12A:1-101 et seq. The Code expressly provides that
Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place * * *. [N.J.S.A. 12A:2-401(2)]
Unless otherwise explicitly agreed where delivery is to be made without moving the goods, if the seller is to deliver a document of title, title passes at the time when and the place where he delivers such documents * * *. [N.J.S.A. 12A:2-401(3)(a)]
Were these the only statutes with which we need be concerned, it is clear that title did pass on Friday, January 9, 1970, when Kelsey in fact delivered both physical possession and a document of title to Robert.
In response to this, plaintiff argues that N.J.S.A. 12A:10-104 and N.J.S.A. 12A:9-203 save from repeal the Motor Vehicle Certificate of Ownership Law (N.J.S.A. 39:10-1 through 25), whereby it is to that latter law we must look to answer questions of title. Our attention is directed to the confirmatory preamble of certain amendments to Chapter 10 of Title 39.
It is to be observed that this reservation from repeal in the Uniform Commercial Code refers specifically to an implementing section found in the chapter of the Code dealing with secured transactions (N.J.S.A. 12A:9-203), and that the implementing section makes particular reference to transactions subject to that chapter. Accordingly, it might be said that the intent of the Legislature, by its nonrepealer, was only to reserve and effectuate the Motor Vehicle Certificate of Ownership Law insofar as the motor vehicle statutes intended to preserve security interests, and that it was not *589 the Legislature's intention to deal with title problems generally.[1] We believe that this interesting question need not be here determined. If the Uniform Commercial Code is applicable, its plain language suggests that title passed on Friday, January 9, 1970. For reasons which will appear, it is our view that the same result is achieved upon resort to the Motor Vehicle Act.
And so the real question appears: Does the Motor Vehicle Act require the filing of the assignment of certificate of ownership, pursuant to N.J.S.A. 39:10-11, before there is a transfer of title in a transaction such as this where the seller has, in good faith, complied fully with his obligations under that act? We think not.
Nothing in the statute indicates that the seller has an obligation to implement his fully executed intent to pass title by accompanying the purchaser to the Division of Motor Vehicles in order to insure himself of proper notification. The express burden of notification is imposed upon the purchaser. N.J.S.A. 39:10-11. Contrast this with N.J.S.A. 39:10-9 and 10, which specifically require certain performances of the seller, including the execution and delivery of the assignment. We are thus persuaded of the legislative intent by the plain words of the statute. Where the intent of the Legislature is apparent from the language used, a court cannot arbitrarily expand the scope of any statute beyond its plainly expressed legislative intent. Pacific Discount Co. v. Powell, 70 N.J. Super. 156 (App. Div. 1961).
In addition, it is apparent from a reading of N.J.S.A. 39:10-11 that the Legislature considered the prospect of the effect on the seller of a purchaser's noncompliance, and protected at least the secured seller from the purchaser's *590 nonfeasance in this regard. Subsection (I) preserves any security interest against such failure on the part of the purchaser "as between the parties to such instrument." It is hardly likely that the Legislature intended to penalize a seller whose purchaser failed to comply with the statute, unless the seller retained a security interest.
It should be noted as well that even with respect to the errant purchaser, the penalties which are imposed are less than likely to strike terror in the heart of even a milquetoast. He is liable to a penalty of $5, and the statute itself directs that such failure shall not constitute a misdemeanor within the purport of N.J.S.A. 39:10-24. The intent to impose a considerably more severe penalty upon a seller who has done everything he is supposed to do, in circumstances such as those here present, is inconceivable.
Nor do we think that Eggerding v. Bicknell, 20 N.J. 106 (1955), or Velkers v. Glens Falls Ins. Co., 93 N.J. Super. 501 (Ch. Div. 1967), aff'd o.b. 98 N.J. Super. 166 (App. Div. 1967), certif. den. 51 N.J. 388 (1968), urged by plaintiff, is to the contrary.
Each of these cases is clearly distinguishable on its facts. In Eggerding there never was any proper assignment, fully executed, by the seller. In Velkers there was no delivery, the certificate not having been properly assigned and, therefore, rejected. It is notable as well that Eggerding was decided well within the framework of an invocation of estoppel. It was in this context that the court there voiced the requirement of strict compliance with statutory directions and opined that "the incomplete assignment did not legally serve to transfer title * * *." 20 N.J. at 112 (emphasis added).
We are of the opinion that, with respect to the rights of the seller or his insurance company, the strict compliance rule mandated by Eggerding is fulfilled when the seller does everything which the statute requires him to do. See Ethridge v. Allied Equipment & Supply Co., 26 N.J. Super. 586 (App. Div. 1953).
*591 Unlike Eggerding and Velkers, in the instant action there is no suggestion of fraud, chicane, overreaching, statutory violation on the part of the seller, or an effort to avoid the ordinarily expected results of a transaction. Kelsey sold to Robert in a straightforward business deal, performed according to statute, and his insurance company is entitled to a declaration that title passed with this sale on Friday, January 9, 1970.
An accordant judgment for defendant may be submitted.
NOTES
[1] It is proper to note in passing that no security interest was involved in the present transaction: Robert paid the full consideration and received an assignment of certificate of ownership upon which no security agreement or lien was imposed.