**Jean L. LEBEGERN, Administratrix ad Prosequendum and Administratrix for the Estate of Daniel L. Carson, Deceased, Plaintiff,**

v.

**Glenn FORMAN, Individually and t/a Forman's Auto Body a/k/a Foreman's Auto, a/k/a Forman's Collision Center, a/k/a Forman's Service Center, Stephen J. Cracker, an Adult Individual, Michael J. Weiss, as agent, employee and/or representative of Good Time Cycles, Inc. and/or Kenneth W. Albert, t/a Good Time Cycles, and Kenneth Albert t/a Good Time Cycles, Defendants.**

**Janet Golonka, Plaintiff,**

v.

**Glenn Forman, Individually and t/a Forman's Auto Body a/k/a Foreman's Auto, a/k/a Forman's Collision Center, a/k/a Forman's Service Center, Stephen J. Cracker, an Adult Individual, Michael J. Weiss, as agent, employee and/or representative of Good Time Cycles, Inc. and/or Kenneth W. Albert, t/a Good Time Cycles, and Kenneth Albert t/a Good Time Cycles, Defendants.**

No. Civ. 02–5598(JBS).

United States District Court,
D. New Jersey.

Oct. 13, 2004.

Marc I. Rickles, Esq., Kardos, Rickles, Sellers & Hand Trenton, NJ, for Plaintiff Lebegern.

Kevin M. Bradway, Esq., Cordisco Bradway & Simmons, Lawrenceville, NJ, for Consolidated Plaintiff Golonka.

Mitchell Waldman, Esq., Youngblood Corcoran Lafferty Stackhouse Hyberg & Waldman, PA, Pleasantville, NJ, and Sandra S. Grossman, Esq., Law Offices Of Steven G. Kraus, Warren, NJ, for Plaintiff AIG Insurance Company in Intervention.

Ian M. Sirota, Esq., Margolis Edelstein, Westmont, NJ, for Defendant Glenn Forman, Individually, t/a Forman's Auto Body, a/k/a Foreman's Auto, a/k/a Forman's Collision Center, a/k/a Forman's Service Center.

Bonnie Laube, Esq., Greenblatt & Laube, P.C., Vineland, NJ, for Defendant Stephen J. Cracker.

William S. Cappuccio, Esq., Hammonton, NJ, for Defendant Michael J. Weiss t/a Mike's Truck Center and Good Time Cycles, Inc.

Rose Marie DiMeo, Esq., Law Offices Of Jackson and DiMeo, Marlton, NJ, for Defendant Kenneth W. Albert t/a Good Time Cycles, Inc.

## *OPINION*

SIMANDLE, District Judge.

### I. INTRODUCTION AND PROCEDURAL HISTORY

This case arises out of a fatal motor vehicle accident which took place on September 16, 2001 on Route 30, White Horse Pike, in Mullica Township, New Jersey. At the time of the accident, Daniel Carson, a Pennsylvania resident, was driving a 2001 Ford Explorer when his vehicle was involved in a head-on collision with another vehicle being driven by Defendant Stephen J. Cracker ("Cracker") of New Jersey. The vehicle operated by Cracker, a 1996 Ford F–350 Pickup Truck, bore the dealer plates of his employer, Defendant Glenn Forman ("Forman"), although title to the vehicle had not yet passed from the sellers (Defendants Kenneth Albert t/a Good Time Cycles and Michael Weiss, alleged agent of Mr. Albert and Good Time Cycles). Cracker drove his vehicle across the center line of the highway and Daniel Carson died as a result of the head-on collision, while his passenger Janet Golonka was injured.[1]

In this wrongful death and survival action by Jean L. Lebegern, the Administratrix of Carson's estate, the principal issue to be determined pertains to choice of law, namely whether the survivor's claim on behalf of the Pennsylvania estate will be governed by the law of New Jersey or Pennsylvania; a true conflict exists in which Pennsylvania law is more favorable

---

1. The suit presenting Janet Golonka's personal injury claims was consolidated with the above-captioned case by Order of the Honorable Ann Marie Donio on April 14, 2003.

to the interests of the Pennsylvania plaintiff while New Jersey law is more favorable to the New Jersey defendants. The Court is also called upon to determine whether Cracker was driving within the scope of his employment or agency of Forman, and whether the titled owners (the Good Time Cycles Defendants) can be held vicariously liable for Cracker's negligence.

This matter comes before the Court upon Defendant Cracker's motion to dismiss Count II of Plaintiff's Amended Complaint on the ground that the Pennsylvania Survival Act does not apply; Plaintiff Lebegern's cross-motion for partial summary judgment to determine that Pennsylvania law governs the survival claim (Counts II and IV); Plaintiff Lebegern's motion for partial summary judgment on issues of agency, permissive use and ownership as to Defendant Glenn Forman, and Defendants Kenneth Albert and Michael Weiss; Defendant Forman's motion for summary judgment; and Defendants Albert and Weiss' motion for summary judgment.

For the reasons stated herein, Defendant Cracker's motion to dismiss Count II of Plaintiff's Amended Complaint will be granted; Plaintiff Lebegern's motion for partial summary judgment on choice of law (Counts II and IV) will be denied; Plaintiff Lebegern's motion for partial summary judgment on issues of agency and ownership will be denied as to Defendant Forman and denied as to Defendants Albert and Weiss; Defendant Forman's motion for summary judgment will be denied; and Defendants Albert and Weiss' motion for summary judgment will be granted.

Extensive pretrial discovery reveals that Cracker was employed by Forman for approximately six years prior to the accident and had a significant personal relationship with Forman, as well as with Forman's daughter. During this time, Cracker continuously drove vehicles owned by Forman displaying Forman's dealer plates issued by the State of New Jersey. In addition, Forman continuously gave Cracker the registration and insurance cards for the dealer plates to carry on his person.

Plaintiff contends that the 1996 Ford truck driven by Cracker on the day of the accident was purchased in August 2000 by Forman through Cracker from Good Time Cycles, a licensed dealer in New Jersey for sale of new and used cars. Forman allegedly provided Cracker with $4,000 in cash for the down payment and a trade-in vehicle that was to be titled to Forman. Plaintiff further alleges that, due to incomplete registration of the transfer of ownership with the New Jersey Department of Motor Vehicles, Good Time Cycles and/or Kenneth Albert and/or Michael Weiss were the owners of the Ford pickup truck on the date of the accident. After plenary briefing, extensive oral argument was held on these motions on April 28, 2004.

## II. *DISCUSSION*

### A. *Summary Judgment Standard*

The legal principles governing these motions are well-established. Summary judgment is appropriate only when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. *Id.*

In deciding whether there is a disputed issue of material fact, the court must view the evidence in favor of the non-

moving party by extending any reasonable favorable inference to that party; in other words, "[T]he nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" *Hunt v. Cromartie*, 526 U.S. 541, 552, 119 S.Ct. 1545, 143 L.Ed.2d 731 (1999) (quoting *Liberty Lobby*, 477 U.S. at 255, 106 S.Ct. 2505). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Liberty Lobby*, 477 U.S. at 250, 106 S.Ct. 2505; *Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 329–30 (3d Cir.1995) (internal citation omitted).[2] Moreover, Federal Rule of Civil Procedure 56(e) provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e). Thus, if the plaintiff's evidence is a mere scintilla or is "not significantly probative," the court may grant summary judgment. *Liberty Lobby*, 477 U.S. at 249–50, 106 S.Ct. 2505; *Country Floors*, 930 F.2d at 1061–62.

█ The standard by which the court decides a summary judgment motion does not change when the parties file cross-motions. *Weissman v. United States Postal Serv.*, 19 F.Supp.2d 254 (D.N.J. 1998). When ruling on cross-motions for summary judgment, the court must consider the motions independently, *Williams v. Philadelphia Housing Auth.*, 834 F.Supp. 794, 797 (E.D.Pa.1993), *aff'd*, 27 F.3d 560 (3d Cir.1994), and view the evidence on each motion in the light most favorable to the party opposing the motion. See *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## B. *Choice of Law*

Defendant Cracker moves to dismiss Count II of the Amended Complaint, which states a statutory cause of action predicated upon the application of the Pennsylvania Survival Act, 20 Pa. Cons. Stat. Ann. § 3373, on the basis that New Jersey law, not Pennsylvania, applies in this case.[3] At the same time, Plaintiff Lebegern moves for partial summary judgment on the issue of the application of the Pennsylvania Survival Act under

---

**2.** The moving party always bears the initial burden of showing that no genuine issue of material fact exists, regardless of which party ultimately would have the burden of persuasion at trial. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Country Floors v. Partnership Composed of Gepner and Ford*, 930 F.2d 1056, 1061–63 (3d Cir.1991)(reviewing district court's grant of summary judgment in a trademark action); *Lucent Info. Manage. v. Lucent Tech.*, 986 F.Supp. 253, 257 (D.N.J.1997)(granting summary judgment in favor of telecommunications provider in trademark action), *aff'd*, 186 F.3d 311 (3d

Cir.1999); *Jalil v. Avdel Corp.*, 873 F.2d 701, 706 (3d Cir.1989), *cert. denied*, 493 U.S. 1023, 110 S.Ct. 725, 107 L.Ed.2d 745 (1990). However, where the nonmoving party bears the burden of persuasion at trial, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325, 106 S.Ct. 2548.

**3.** At oral argument, counsel for the Forman Defendants joined with Defendant Cracker in making this motion.

Counts II and IV of the Amended Complaint.

As a federal court sitting in diversity, this Court is obligated to apply the choice of law rules of the forum state—in this case, New Jersey. *See Klaxon Co. v. Stentor Elec. Mfg.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). New Jersey's choice of law principles dictate that a court use a flexible "governmental-interest" analysis "which requires application of the law of the state with the greatest interest in resolving the particular issue." *Gantes v. Kason Corp.,* 145 N.J. 478, 679 A.2d 106, 109 (1996); *Veazey v. Doremus,* 103 N.J. 244, 510 A.2d 1187 (1986).

The first prong of the New Jersey governmental-interest analysis requires a court to assess whether there is an actual conflict between the relevant laws of the respective states. If the court determines that such an actual conflict does exist, the second prong of the analysis "seeks to determine the interest that each state has in resolving the specific issue in dispute." *Gantes,* 679 A.2d at 109. The "qualitative, not the quantitative" nature of each state's interest must ultimately determine which state's laws should apply. *Veazey,* 510 A.2d at 1189–1190.

In this case, it is clear that the first prong is satisfied with respect to Plaintiff's survival claim. The issue to be resolved, the extent to which a decedent's estate may recover damages in a survival action, presents a direct conflict between New Jersey and Pennsylvania law. New Jersey's Survival Act, N.J.S.A. § 2A:15–3 [4], limits the recovery by the estate of a decedent to the pain and suffering experienced by the decedent from the time of the alleged negligence and resulting injury until the time of death. In contrast, Pennsylvania's Survival Act, 20 Pa. Con. Stat. Ann. § 3371 [5], permits an estate to recover not only for the decedent's pain and suffering, but also for the prospective net earning capacity of the decedent. Thus, a true conflict is presented here. Although Plaintiff argues that this case falls more squarely in the camp of cases represented by the decisions in *Foster v. Maldonado,* 315 F.Supp. 1179 (D.N.J.1970), and *Pollock v. Barrickman,* 610 F.Supp. 878 (D.N.J. 1985), those cases did not find the presence of a true conflict; see *Foster,* 315 F.Supp. at 1182 ("Adopting the same approach as I must, I find that the State of Pennsylvania has a very strong interest in the estate of its decedents, while New Jersey apparently has little, if any, countervailing policy . . . ."), and *Pollock,* 610 F.Supp. at 880 ("Upon careful reflection, this court believes that the instant case does *not* present a true conflict, and we will therefore follow *Foster* in applying the

4. The New Jersey Survival Act, N.J.S.A. § 2A:15–3, states in relevant part:

Executors and administrators may have an action for any trespass done to the person or property, real or personal, of their testator or intestate against the trespasser, and recover their damages as their testator or intestate would have had if he was living. In those actions based upon the wrongful act, neglect, or default of another, where death resulted from injuries for which the deceased would have had a cause of action if he had lived, the executor or administrator may recover all reasonable funeral and burial expenses in addition to damages accrued during the lifetime of the deceased.

5. The Pennsylvania Survival Act, 20 Pa. Cons. Stat. Ann. § 3371, states in relevant part:

All causes of action or proceedings shall survive as provided by 42 Pa.C.S. § 8302 (relating to survival action).

Section 8302 of 42 Pa. Con. Stat. Ann. states in relevant part:

All causes of action or proceedings, real or personal, shall survive the death of the plaintiff or of the defendant, or the death of one or more joint plaintiffs or defendants.

Pennsylvania Survival Act.")(emphasis in original).

■ Having identified an actual conflict between the relevant laws of the two states, this Court must next examine the nature and magnitude of each state's interest in seeing its laws applied in this case. The legislatures of New Jersey and Pennsylvania have made different judgements on the measure of damages in a survival action. As recognized in *Colley v. Harvey Cedars Marina*, 422 F.Supp. 953 (D.N.J. 1976), "Pennsylvania has determined that compensation to decedents' estates is of primary importance." *Id.* at 955. Here, because Plaintiff is charged with administering a Pennsylvania estate, the interests of Pennsylvania would be furthered by application of its own law on this issue.

The New Jersey legislature, on the other hand, has adopted a survival law that limits the benefits to decedents' estates. Although the New Jersey legislature may have taken into account the interest of the decedent's estate, the Act's severe limitation on the recovery in such an action suggests that the legislature's interest in the protection of defendants from large recoveries took priority over the interest of the decedent's estate. *See Capone v. Nadig*, 963 F.Supp. 409, 413 (D.N.J.1997). Thus, New Jersey's interest in the protection of its resident defendants from excessive damage awards would be furthered by the application of New Jersey substantive law to this case.

■ Plaintiff argues that the New Jersey legislature's intent in the creation of its survival act is not sufficiently enunciated in the neutral language of the statute to override the strong interest of Pennsylvania. The New Jersey legislature's intent with respect to its survival act, however, can be further gleaned by examining its companion, the wrongful death statute, N.J.S.A. § 2A:31-1 *et seq.* The New Jer-

sey wrongful death statute provides for the recovery of damages for "pecuniary injuries resulting from such death, together with the hospital, medical and funeral expenses incurred for the deceased, to the persons entitled to any intestate personal property of the decedent." N.J.S.A. § 2A: 31-5. This statute suggests a concern on the part of the legislature with compensation to those who actually suffer direct pecuniary loss of decedent's financial support, a concern that is both distinct from and complementary to its concern with protecting resident defendants from excessive damage awards, that concern being embodied in the state's survival act. Viewed together, therefore, the two outline a comprehensive scheme put in place by the legislature for damage recoveries in cases such as this arising from tort liability for death.

It is true, as counsel for both sides point out, that the law in this District on choice of law decisions in cases with similar factual circumstances as the one presently before this Court split into two categories: those that ultimately apply the New Jersey Survival Act, *see e.g., Capone v. Nadig*, 963 F.Supp. 409 (D.N.J.1997); *Amoroso v. Burdette Tomlin Memorial Hosp.*, 901 F.Supp. 900, 904 (D.N.J.1995); *Mathis v. Motley*, 649 F.Supp. 38, 40 (D.N.J.1986); *Colley v. Harvey Cedars Marina*, 422 F.Supp. 953 (D.N.J.1976), and those that ultimately apply the law of a foreign state, *see e.g., Pollock v. Barrickman*, 610 F.Supp. 878 (D.N.J.1985); *Foster v. Maldonado*, 315 F.Supp. 1179 (D.N.J.1970). The Third Circuit has been largely silent on this issue.

One opinion of the Third Circuit, however, sheds distinct light on the matter. In *Petrella v. Kashlan*, 826 F.2d 1340 (3d Cir.1987), a Florida resident whose son died following an automobile accident during a visit to New Jersey, as the alleged

result of New Jersey doctors' malpractice in treating the son's injuries, brought a wrongful death action against the doctors and medical center at which they worked. At the district court level, plaintiff sought to have the Florida rather than New Jersey law of damages applied. The district judge denied plaintiff's motion, ruling that New Jersey law applied. In reviewing this decision, the Third Circuit agreed, stating:

> We do not doubt that the policies of Florida and New Jersey are both implicated here.... Inasmuch as N.J. Stat. Ann. § 2A:31–5 ... sets forth the type of damages that may be recovered in a wrongful death action, it reflects the New Jersey Legislature's determination *both of what is fair for a plaintiff to recover and a defendant to pay* in such a case. Accordingly, New Jersey's interest in this case is no less than Florida's and the [district] judge correctly held that its law of damages should be applied.

*Id.* at 1343 (emphasis added). In interpreting the neutrality of the language of the wrongful death statute, the Third Circuit determined that the New Jersey legislature had expressed an interest both in what is fair for a plaintiff to recover and what is fair for a defendant to pay. This Court finds the same legislative intent to be expressed in the equally neutral language of the New Jersey Survival Act, that is, both to provide for a degree of recovery for survival act plaintiffs while not exposing New Jersey defendants to compensatory damage awards for the decedent's own unrealized future income.

■ Since the interests of both New Jersey and Pennsylvania would arguably be furthered by the application of their respective laws to this case, an evaluation of other factors must be considered in order to determine which state's law should apply. *See Capone,* 963 F.Supp. at 413. One such factor is the place of the injury, despite New Jersey's rejection of the rule of *lex loci delecti* in tort cases. "Indeed, the place of the injury gains even greater importance where 'the place where the injury occurred was not fortuitous, as for example, in an airplane crash.'" *Id.* (internal citations omitted). In the instant case, the accident occurred on the roads of New Jersey. According to counsel, the decedent, Mr. Carson, had decided to drive to a store to make a purchase of lawn ornaments in New Jersey. He was familiar with the particular shop and wished to return to it. He was no stranger to New Jersey's roads, residing within a few miles of the New Jersey border (just across the Delaware River). His presence in New Jersey, therefore, was not merely fortuitous.[6]

The residences of the parties involved should also be considered. Here, Defendants Cracker, Weiss, Albert and Forman reside in New Jersey, and their busi-

---

**6.** The relationship of Mr. Carson to New Jersey, and to the New Jersey Defendants, was not as extensive as that existing in *Capone, supra,* in which the Pennsylvania decedent's relationship to New Jersey (where she was visiting her parents) and to the New Jersey physicians who rendered medical treatment during two office visits. *Capone v. Nadig,* 963 F.Supp. at 410. In *Capone,* as in *Blakesley v. Wolford,* 789 F.2d 236, 243 (3d Cir.1986), the state where medical treatment was rendered, and where the doctor patient relationship existed, has an interest in the measurement of damages against resident medical service providers. *See Capone,* 963 F.Supp. at 413–14. A similar interest exists in New Jersey in regulating the damages for which resident motor vehicle operators (and their insurers) may be liable, as motor vehicle insurance is mandatory and the field is intensely regulated by the state. That there is no prior relationship between the decedent and the New Jersey tortfeasor in this case does not weaken New Jersey's interest in applying its law to local motor vehicle accidents involving a New Jersey driver.

nesses, which are implicated in the functions of the Cracker vehicle, are conducted in New Jersey. The decedent, Daniel Carson, was a resident of Levittown, Pennsylvania at the time of the accident. However, as observed in *Capone v. Nadig,* 963 F.Supp. at 413, " '[b]y entering the state ... the visitor has exposed himself to the risks of the territory and should not expect to subject persons living there to a financial hazard that their law had not created.' D.F. Cavers, *The Choice of Law Process* 146–47 (1965), *cited in Colley,* 422 F.Supp. at 957." This is especially true if the travel into New Jersey was purposeful and not fortuitous.

This Court thus finds that although both New Jersey and Pennsylvania have an interest in seeing their respective laws applied to the survival claim in this case, New Jersey has a greater interest in having its laws applied. In addition to the accident having occurred in New Jersey, Defendants, as residents of this state, including a licensed automobile dealer and a towing service operator, are "entitled to expect the financial protections afforded by New Jersey law." *Capone,* 963 F.Supp. at 414. The decision of the Plaintiff's decedent and of Plaintiff Galonka to go shopping in New Jersey was intentional and planned, not a fortuity. The natural inclination to sympathize with the loss sustained by the survivors of Mr. Carson cannot change the settled principles of law which determine that New Jersey's law of damages will be applied in this case. Therefore, Defendant Cracker's motion to dismiss Count II of Plaintiff's Amended Complaint will be granted and Plaintiff Lebegern's motion for partial summary judgment on choice of law will be denied, and the New Jersey Survival Act will apply herein.

## C. *Agency, Permissive Use, Ownership*

### 1. *The Forman Defendants*

■ In her motion for summary judgment, Plaintiff contends that Glenn Forman, individually and t/a Forman's Auto Body, a/k/a Foreman's Auto, a/k/a Forman's Collision Center, a/k/a Forman's Service Center ("Forman Defendants"), was the equitable owner of the Ford truck and thus retained possession and control for purposes of liability. In addition, Plaintiff argues that Defendant Cracker was acting as the agent, servant and/or employee of the Forman Defendants.[7] The Foreman Defendants respond with a cross-motion for summary judgment on the agency issue. Here, genuine issues of material fact are in dispute as to preclude the granting of summary judgment to either party.

New Jersey law on the issue of automobile agency is set forth in *Harvey v. Craw,* 110 N.J.Super. 68, 264 A.2d 448 (1970), where the Appellate Division stated:

> To establish agency, plaintiffs relied upon the rule of law that use of an automobile upon a public highway by one who is not its owner raises a presumption of agency between the operator and the owner.

> This presumption is one of fact. It can be rebutted by a defendant owner where a plaintiff seeks to hold him vicariously liable for the negligence of the driver ... the effect of such presumption is described in evidence Rule 14:

>> If evidence to the contrary of a presumed fact is offered, the existence or non-existence of such fact shall be for the trier of fact, unless such evidence is such that the minds of reasonable men would not differ as to the exis-

---

**7.** Defendant Stephen Cracker joins with Plaintiff for the relief requested in her moving papers, relying upon the arguments as set forth therein.

tence or non-existence of the presumed fact.

To prevent the issue of agency from reaching the jury, the owner must show by uncontradicted testimony that no employer employee or principal-agent relationship existed, or, if one did exist, that the employee or agent had transgressed the bounds of his authority.

*Id.* at 451.

Defendant Cracker testified that during the course of Defendant Cracker's employment with Glenn Forman, he was given various vehicles, which he believed to be owned by Forman, to drive while working for Forman as well as for his own personal use. (August 13, 2003 Deposition of Stephen Cracker, 33–34, 36–41, 56–57). Forman never placed limitations on his use of the dealer plates, (*id.* at 50:9), but instead permitted Cracker to use his vehicles and dealer plates at any time. (*Id.* at 34:4–25). For six years, Forman gave Cracker the registration card and insurance card for the dealer plate being used by him to carry on his person. (*Id.* at 48:6–24; 52:19). The 1996 Ford truck driven by Cracker on the day of the accident was purchased, according to Defendant Cracker, by Forman through Cracker, with Forman providing Cracker with $4,000 cash for the down payment and a trade-in vehicle that was believed to have been titled to

Forman. (*Id.* at 18:4; 19:8). There was no written or oral agreement between Cracker and Forman requiring Cracker to pay back the $4,000. (*Id.* at 20:13–22; 83:15–18). In addition, the truck was not purchased exclusively for Cracker's use. (*Id.* at 78:5). If anyone at Forman's shop needed to use the truck, they were permitted to do so. (*Id.* at 81:11).[8] In fact, the truck, which had been damaged prior to Good Time Cycles's purchase of it, had been towed to Forman's business premises where it remained for a year while repairs were made. (*Id.* at 33.)

Defendant Cracker initially indicated in his answers to interrogatories that he was merely heading home from his parttime job as a bouncer at Club Tru in Atlantic City when the accident occurred. He mentioned nothing of any stop at Forman's Auto Body, and did not indicate that he was performing any activity or engaging in any employment related duties at the time of the accident. In answering, Cracker stated only that he "had worked his usual shift at Club Tru and was returning home when he was involved in the accident on September 16." (Answers to Interrogatories, Answer # 23).

At the time of his first deposition, however, Cracker expanded on that answer to indicate that he had stopped at Forman's Auto Body between Club Tru and going

---

**8.** As between Forman and Cracker, the record is unequivocal that Cracker was a permissive user at the time of the accident. Under the initial permission rule, the New Jersey Supreme Court has stated:

> Accordingly, we hold that if a person is given permission to use a motor vehicle in the first instance, any subsequent use short of theft or the like while it remains in his possession, though not within the contemplation of the parties, is a permissive use within the standard omnibus clause in an automobile insurance policy.

*Matits v. Nationwide Mutual Ins. Co.*, 33 N.J. 488, 166 A.2d 345, 349 (N.J.1960). Thus,

Cracker's use of the Ford truck on the day of the accident was permitted by Forman because of the express and continually implied permission from Forman for Cracker to use this vehicle, and because the subsequent use, while possession was retained by Cracker, did not constitute theft or the like. *See also French v. Hernandez*, 370 N.J.Super. 104, 850 A.2d 585, 590–91 (2004)(finding permissive use where use at time of accident was reasonably related to earlier permission). The doctrine of permissive use, however, is not dispositive of the present issue of agency or employment, as "permissive use" applies to motor vehicle insurance coverage.

home, but he could not recall the reason why. (August 13, 2003 Deposition of Stephen Cracker, 65–66; December 10, 2003 Deposition of Stephen Cracker, 12, 21–23). Moreover, Cracker testified at his second deposition that he would stop at Forman's Auto Body "a majority of the time" when driving home from Club Tru, he would not do so all the time, and he had no memory of Defendant Forman giving him specific instructions to do things at Forman's Auto Body on that particular day. (December 10, 2003 Deposition of Stephen Cracker, 21:4–25, 22:1–9). In his February 18, 2004 Affidavit, Defendant Cracker stated that "[f]or sometime prior to September 16, 2001, [he] would routinely stop at Forman's business location on a Sunday, in order to do work to prepare for the following workday on Monday" and that this was his habit. (Affidavit of Stephen Cracker, ¶ 8).

In his deposition testimony, Defendant Forman testified that Cracker performed work for him "all over," "wherever [he] told him to," including at his auto body shop, on his blueberry farm, at his rental properties, at his home and towing work. (Deposition of Glenn Forman, 28–30). Prior to the accident, Forman had contracts with various municipalities in New Jersey for towing service on an "on call" basis, and Cracker would perform "on call" towing services for Forman any time during the day or night. (Id. at 30–34). Forman directed Cracker to use the dealer plates issued by the State of New Jersey and the accompanying registration cards and to carry those on his person at all times. (Id. at 44–45). Forman knew Cracker drove his vehicles to and from Cracker's part-time job in Atlantic City. Furthermore, Forman gave Cracker keys to the business, the alarm code and he testified that Cracker had complete access to Forman's shop. (Id. at 115–16; Affidavit of Stephen Cracker, ¶ 9).

During the August 13, 2003 deposition, Defendant Cracker denied that he was running any errands for Defendant Forman at the time of the accident. (August 13, 2003 Deposition of Stephen Cracker, 90:6–15). Cracker also stated that he was not in the course of his employment with Forman at the time of the accident or engaged in any work related activities when the accident occurred. (Id. 16–20). Glenn Forman, in his deposition, also stated that Defendant Cracker was not doing anything on his behalf, running any errands, or acting in the course of his employment at the time of the accident. (Deposition of Glenn Forman, 174:9–25).

An examination of the present record with respect to these issues, as summarized above, reveals genuine issues of material fact, thereby precluding this Court from granting summary judgment for either side. The facts surrounding these issues present questions that are best left to a jury to wrestle with, including, but certainly not limited to, the purpose of Cracker's having the truck, whether Cracker did indeed stop at Forman's place of business on the day of the accident, the nature of being "on call," etc. Furthermore, Defendant Cracker's answers to interrogatories, August 13, 2003 deposition testimony, and December 10, 2003 deposition testimony are at times, with respect to certain issues, contradictory. This in itself raises questions of credibility, questions that lie in the province of a jury, rather than with this Court determining a motion for summary judgment. For these reasons, the motions for summary judgment of Plaintiff Lebegern and the Forman Defendants will be denied.

## 2. *Defendants Albert, Weiss, and Good Time Cycles*

■ Plaintiff has filed a motion for summary judgment regarding issues of lia-

bility, ownership, permissive use and agency against Defendants Kenneth W. Albert t/a Good Time Cycles and Michael J. Weiss t/a Mike's Truck Center and Good Time Cycles ("Albert" and "Weiss").[9] In response, these Defendants filed their own cross-motion for summary judgment. Plaintiff contends that pursuant to the law in New Jersey, Defendant Weiss, as an agent of Good Time Cycles, and Defendant Albert, t/a Good Time Cycles, as the titled owners of the 1996 Ford F–350 Pickup Truck, are liable for the damages claimed under the Amended Complaint.

Plaintiff argues that there is no material issue in dispute in this case regarding the identity of the title owners of the 1996 Ford F–350 Pickup Truck driven by Defendant Cracker on the day of the accident. Defendant Michael J. Weiss, acting as the agent for Good Time Cycles, purchased the truck at a Florida salvage sale. (See Deposition of Michael Weiss, 112). In addition, Good Time Cycles is the title owner of the Ford truck. (See Pl.'s Ex. C, Certificate of Title). Good Time Cycles did not obtain a New Jersey certificate of ownership prior to selling the truck to Defendant Forman.

Defendant Weiss has testified that Good Time Cycles, Inc., agreed to sell the Ford truck to Cracker (Weiss Dep. at 114), and Weiss acknowledged receipt of deposit monies in the amount of $4,000 toward the purchase of the truck (id. at 116), and Weiss gave the deposit to Defendant Albert (id. at 156). Weiss testified he nonetheless gave the title to Cracker so he could attempt to pay for the vehicle in full (Weiss Dep. at 122), while Cracker disputes that he received the title. (Cracker Dep. at 32).

Plaintiff thus asserts that because there was no transfer of the legal title between Good Time Cycles, as the seller, and Defendants Forman and/or Cracker, the buyer, liability lies with the owner of record. In support of the assertion that mere ownership gives rise to liability, Plaintiff calls this Court's attention to two cases: *Eggerding v. Bicknell,* 20 N.J. 106; 118 A.2d 820 (1955) and *Velkers v. Glens Falls Insurance Co.,* 93 N.J.Super. 501, 226 A.2d 448 (1967). Both cases stand for the same proposition, with the *Velkers* court finding *Eggerding* controlling.

In *Eggerding,* defendant Albert Bicknell purchased a used Chrysler automobile from defendant Steve Chonka Motors, Inc. Bicknell paid a deposit on the Chrysler and was given possession of the vehicle bearing Chonka Motors dealer plates. Bicknell subsequently paid the balance, received the certificate of ownership and an assignment of certificate signed by a representative of Chonka Motors, Inc. Bicknell, however, did not sign the assignment of certificate. Shortly thereafter, Bicknell was involved in a motor vehicle accident while driving the Chrysler bearing the Chonka Motors dealer plates. The court found that the seller's signature on the assignment of certificate prior to execution by the buyer and insertion of the date did not follow the dictates of the statute governing the transfer of title to motor vehicles. *Id.* at 823. Thus, the court held that legal title did not transfer from Chonka Motors to Bicknell before the date of the accident and liability continued to attach to the legal owner, i.e. Chonka Motors. *Id.*

The court in *Eggerding,* however, held that New Jersey law declines to impose liability upon the owner of a car where its negligent operation resulting in the injury was not by the owner either directly or through his agent, servant, or employee. More specifically, the court agreed there

9. Again, Defendant Stephen Cracker joins in Plaintiff's motion for summary judgment.

with the jury's finding that Chonka Motors, Inc., which sold a vehicle to the individual later involved in the motor vehicle accident, was not liable because that individual was not acting as the agent or employee of Chonka at the time of the accident. The court found, however, that Chonka's insurer was liable to provide coverage for the driver as title had not passed because the applicable statute was not followed.

■ As Defendants Albert and Weiss correctly point out, whether the sale legally transferred title and ownership to Defendants Cracker and/or Forman is relevant only to the issue of whether Good Time Cycles's insurance policy should provide coverage to Defendant Cracker. Defendants Albert and Weiss argue that because Good Time Cycles's carrier has not been sued, the issue is moot. Assuming, however, that Good Time Cycles's carrier had been sued, Defendants, on behalf of Good Time Cycles, argue that they did comply with the statutory requirements necessary to transfer title; Defendant Cracker, however, did not. Defendants argue that the onus was on Cracker to file the assignment with the Division of Motor Vehicles, which he failed to do. Filing of the certificate of title with the Division of Motor Vehicles by the purchaser is not required to effect transfer of ownership for the purposes of determining liability insurance coverage. So long as the seller in good faith complied with his duty of "execution and delivery of the assignment," ownership is transferred even if the purchaser has failed to make the required filing with the Department of Motor Vehicles. *New Jersey Mfrs. Ins. Co. v. Keystone Ins. Co.,* 112 N.J.Super. 585, 272 A.2d 306, 308 (1971). Here, the issue of whether Defendant Albert t/a Good Time Cycles or his agent, Defendant Weiss, ever transferred title to Cracker or Forman is

in dispute, since Cracker denies he received title and it is logical (and may therefore be implied from the facts most favorable to plaintiffs as the party opposing summary judgment) that no licensed car dealership would transfer title to a person who had not paid for the vehicle or made some firm agreement to do so.

■ Even if their continuing ownership of the vehicle is assumed, Defendants Albert and Weiss, however, correctly argue that it is well established in New Jersey that ownership alone is insufficient to impose liability upon the owner of a vehicle for the allegedly negligent operation of that vehicle by another. *Schimek v. Gibb Truck Rental Agency,* 69 N.J.Super. 590, 174 A.2d 641, 642 (1961). In order to recover damages from the owner, a plaintiff must establish that the driver of the vehicle was engaged in the owner's business as his agent, that the driver was an employee acting within the scope of his employment, or that some other master-servant relationship existed between the owner and driver. *DiCosala v. Kay,* 91 N.J. 159, 450 A.2d 508, 513 (1982).

Plaintiffs' opposition brief, while admitting all facts in the Defendants' Statement of Facts, suggests that there is a material factual dispute because (1) Cracker testified that Weiss saw him driving the truck a number of times before the accident, citing Cracker Dep. at 46, and (2) Cracker testified that he helped Weiss with auto body work on occasion, citing Cracker Dep. at 26. Whether Cracker helped Weiss with auto body work on occasion is not relevant to whether Cracker was an agent, servant or employee of Albert and/or Weiss at the time of the accident. While Cracker worked for Forman, and while Forman had paid the $4,000 deposit and provided the trade-in vehicle to Good Time Cycles, there is no evidence that Cracker worked for Good Time Cycles or

Albert or Weiss at any material time. That Weiss "saw" Cracker driving the truck likewise adds no inference that Cracker was the agent or employee of Good Time Cycles, Albert or Weiss.

Therefore, putting aside any questions about actual ownership, Plaintiff's argument fails because no evidence exists to support the conclusion that Defendant Cracker was the agent of the moving defendants. Nothing in the record suggests, even though discovery has now ended, that Defendant Cracker was an agent, servant or employee of Defendants Kenneth Albert or Michael Weiss or Good Time Cycles. Moreover, it certainly cannot be said that Defendant Cracker was doing anything to further the interests of Defendants Albert, Weiss, or Good Time Cycles at the time of the accident. Cracker did not work for Good Time Cycles or Michael Weiss at the time of the accident. Nor is it the case that Cracker was running an errand for Weiss or Albert or Good Time Cycles when the accident occurred. For these reasons, therefore, the motion for summary judgment of Defendants Albert and Weiss must be granted, and the summary judgment motion of Plaintiff Lebegern must be denied.

## III. CONCLUSION

For the reasons discussed above, New Jersey law applies to Plaintiff's measure of damages and Defendant Cracker's motion to dismiss Count II of Plaintiff's Amended Complaint will be granted; Plaintiff Lebegern's motion for partial summary judgment on choice of law (Counts II and IV) will be denied; Plaintiff Lebegern's motion for partial summary judgment on issues of agency, permissive use and ownership will be denied as to Defendant Forman and denied as to Defendants Albert and Weiss; Defendant Forman's motion for summary judgment will be denied; and Defendants

Albert and Weiss' motion for summary judgment will be granted.

The accompanying Order will be entered.

## ORDER

This matter having come before the Court upon Defendant Stephen J. Cracker's motion to dismiss Count II of Plaintiff's Amended Complaint; Plaintiff Jean Lebegern's motion for partial summary judgment on choice of law (Counts II and IV); Plaintiff Jean Lebegern's motion for partial summary judgment on issues of agency, permissive use and ownership as to Defendant Glenn Forman, and Defendants Kenneth Albert and Michael Weiss; Defendant Glenn Forman's motion for summary judgment; and Defendants Kenneth Albert and Michael Weiss' motion for summary judgment; and the Court having considered the parties' submissions and having heard oral argument on April 28, 2004; and for the reasons stated in the Opinion of today's date; and for good cause shown;

IT IS this *13th* day of October, 2004 hereby

**ORDERED** that Defendant Stephen Cracker's motion to dismiss Count II of Plaintiff's Amended Complaint [Docket Item No. 67–1] shall be, and hereby is, *GRANTED*; and

**IT IS FURTHER ORDERED** that Plaintiff Jean Lebegern's motion for partial summary judgment on choice of law (Counts II and IV) [Docket Item No. 73–1] shall be, and hereby is, *DENIED*; and

**IT IS FURTHER ORDERED** that Plaintiff Jean Lebegern's motion for partial summary judgment on issues of agency, permissive use and ownership with respect to Defendants Glenn Forman, individually and t/a Forman's Auto Body, a/k/a Foreman's Auto, a/k/a Forman's

Collision Center, a/k/a Forman's Service Center, and with respect to Kenneth Albert t/a Good Time Cycles, and Michael J. Weiss, individually and t/a Mike's Truck Center and Good Time Cycles [Docket Item No. 64–1] shall be, and hereby is, *DENIED*; and

**IT IS FURTHER ORDERED** that Defendant Glenn Forman, individually and t/a Forman's Auto Body, a/k/a Foreman's Auto, a/k/a Forman's Collision Center, a/k/a Forman's Service Center's motion for summary judgment [Docket Item No. 63–1] shall be, and hereby is, *DENIED*; and

**IT IS FURTHER ORDERED** that Defendants Kenneth Albert t/a Good Time Cycles and Michael J. Weiss', individually and t/a Mike's Truck Center and Good Time Cycles, motion for summary judgment [Docket Item No. 66–1] shall be, and hereby is, *GRANTED*.